No. 41.—CHARLES FOSTER, plaintiff in error, *vs.* WILSON W. BROOKS, administrator of G. M. Smith, defendant.

[1.] It is not competent to prove insanity by proof of the reputation or opinion of the neighborhood.

[2.] *Held*, that this Court will not interfere with the established practice of the Circuit Courts of Georgia, in relation to the alternative form of the verdict in trover.

[3.] In actions of trover, where there is conflicting evidence of the value of the property at the same time: *Held*, that the Jury may find the highest value proven, but are not compelled so to find; the *true value* derived from all the evidence being the criterion generally of the damages.

[4.] The speaking of a Juryman, after being charged with the case, with persons not members of the Jury about the evidence, and expressing his opinion to them as to the rights of one of the parties: *Held*, to be a serious indiscretion, worthy of judicial censure.

Trover, in Heard Superior Court. Tried before Judge HILL, October Term, 1848.

Foster *vs.* Brooks.

Wilson W. Brooks, administrator of George M. Smith, deceased, brought his action of trover in Heard Superior Court, against Charles Foster, to recover eighteen slaves, as the property of his intestate. Foster defended, under a bill of sale from Smith, which the plaintiff sought to avoid by proof that Smith was an idiot, incapable of contracting.

A verdict was rendered at the October Term, 1848, for the plaintiff, for the sum of $8,700, " which can be discharged by the delivery of the negroes mentioned in the declaration, and also $3,916 94 hire."

A motion was made for a new trial, which was overruled by the Court. The defendant thereupon filed his bill of exceptions, alleging as errors,

1. The Court erred in permitting plaintiff's counsel to give in evidence the public opinion and reputation of the neighborhood in relation to the idiocy or insanity of Smith, the intestate of plaintiff.

2. The Court erred in charging the Jury, if they should find for plaintiff, the form of their verdict should be in the alternative, finding so much money for the plaintiff, to be discharged by the delivery of the property in a certain time.

3. Because the verdict is contrary to law, being in the nature of a decree.

4. Because the Court erred in charging the Jury that, if they should find for the plaintiff, they should estimate the value of the property at the highest price proven, as it was usual to do in such cases, inasmuch as, under our practice, it might be discharged by a return of the property.

5. The Court erred in not granting a new trial on the above grounds, and on the additional ground of misconduct in one of the Jury, in having and holding conversations with other persons, not members of the Jury, respecting said case, and the title of defendant and the result of the case, to wit: " that he, defendant, could not hold said property ; that he had exhibited a little piece of paper, about as big as a man's hand, as his title, and that he could never hold property under such a title as that."

This last ground was supported by affidavits.

On these exceptions error has been assigned.

O. WARNER and D. IRWIN, for plaintiff in error.

Foster *vs.* Brooks.

The counsel for the plaintiff in error, insist that testimony, as to the reputation of a person being an idiot or of unsound mind, is inadmissible.

1. It is a general rule, that such testimony cannot be admitted to prove particular facts. 1 *Stark. on Ev. part* 1, *s.* 34 *to* 43. 1 *Phil. Ev.* 190, 191. 3 *Dane's Abr. page* 390. 2 *Conden. R.* 496. 3 *Conden. R.* 465. 10 *Peters,* 412. 9 *Ala. R.* 36. 11 *Ib.* 720. 7 *John.* 95. 11 *Ib.* 437. 2 *Caines' R.* 107. 2 *Wash. R.* 146. 1 *Johns. Ch.* 140. 15 *Johns.* 493. 1 *Mass.* 71. 8 *Johns.* 99. 1 *Greenlf. Ev.* 489.

2. The verdict is void in law. It should have been for a sum certain only, and not in the alternative, to be discharged by a delivery of the property. Trover is an action for damages alone, for the conversion of personal chattels, and not for the chattel itself, and the plaintiff can recover nothing but damages. This is the rule at Common Law. *See* 3 *Bl. Com.* 152, 153. 1 *Chit. Pl.* 148.

The Common Law upon this subject, is of force in Georgia. *Hotch.* 93.

3. The rule of damages in actions of trover, is the value of the property at the time of conversion. 14 *Johns. R.* 128. 3 *Bacon's Abr. tit. Damages, letter D.* 10 *Ala. R.* 689. Where it was held that interest *may* be allowed on that value. *Sedgwick on Damages,* 496.

4. The conduct of the Jury was a sufficient ground for a new trial. *Graham on N. T.* 64, 101. 1 *Swift's Dig.* 775. 5 *Cowen,* 283. 2 *South.* 687, *cited in* 3 *U. S. Dig.* 630. 1 *Mass.* 543. 2 *Root's R.* 349. 2 *Dallas,* 56. 4 *Maule & Sel.* 192. 5 *Price R.* 173. 12 *East,* 229. 1 *Serg. & Rawle,* 169.

5. A Court will grant a new trial, where improper evidence has been admitted. 12 *Wend.* 64. 2 *McCord,* 157. 3 *Cowen,* 621. 16 *Johns.* 89. 1 *Hill's S. C. R.* 234. 2 *Nott & McCord,* 446. 1 *Mill's Const. R.* 6, 200. 2 *Dev.* 563. 4 *Ib.* 328. 2 *Dev. & Bat.* 196, 257. 5 *Mass.* 405. 6 *N. H.* 333, 80. 9 *Pick.* 176. 6 *Cow.* 445.

6. There is not sufficient evidence to support the verdict, independent of the illegal testimony. The legal proof admitted on the trial, did not establish that Smith, the intestate, had that derangement or imbecility of mind, which would render him incapable, according to the rules of law, of making a valid contract,

and this was the material point in the case.  4 *Cowen,* 207.  2*I* *Wend.* 142.

BURCH and W. DOUGHERTY, for defendant in error.

The following are the points submitted by defendant's counsel :

1. Any public and notorious fact may be proven by reputation. 1 *Starkie,* 28, 29.

2. The action of trover is a substitute for the action of detinue, and is now the only form of action for the recovery of personal property.  3 *Bacon's Ab.* 134.  3 *Bl. Com.* 122.  And being sub-stituted by the *Court,* it may be made answer the purposes of both forms of action, which has been, in fact, the practice of our Courts, and so recognized by Act of Legislature.  *Prince,* 450. And so has been the practice of the English Courts.  2 *Wheat. N. P.* 1417.  3 *Bur.* 1364.  9 *Bacon's Abr.* 680.  7 *T. R.* 54.  And if the verdict be informal, it does not result in the injury of the plaintiff in error, and may be disregarded by him.  1 *Nott & McCord,* 237.  That part of the finding which authorizes the dis-charge of the value of the negroes, by delivering them, can at most be but surplusage, and may be stricken as such by this Court.  *Act to organize S. C. sec.* 5.

3. Loose expressions of one or more Jurors, is not sufficient to set aside a verdict.  3 *Brevard,* 130.  2 *Dunlap's Practice,* 675. 2 *Tidd,* 988.  The Courts will not receive affidavits of partiality and prejudice from the unsuccessful party.  *Ib.* 908.

4. The Jury had the right to find for defendant in error the highest value proven.  1 *Nott & McCord,* 334.  In this case, but one value was proven, and if the Court erred in charging the Ju-ry to find the highest value, it was an unnecessary charge, and could not and did not lead the Jury into error.

5. If we admit the proof of idiocy, by reputation, be inadmissible, there was sufficient proof beside to authorize the finding.  1 *Kel-ly,* 556.  *Ib.* 580.  1 *Selw. Practice,* 487.  *Tidd,* 907.  3 *Johns.* 528.  Weakness of mind, coupled with fraud and imposition, will vitiate a contract.  14 *Vesey,* 273.

His Honor, *Judge Warner*, having been of counsel in the Court below, did not preside in this cause in the Supreme Court.

*By the Court.*—NISBET, J. delivering the opinion.

Foster *vs.* Brooks.

[1.] The defendant in this case relied upon a bill of sale from the plaintiff's intestate. The plaintiff attacked that bill of sale upon two grounds, to-wit : the insanity of the maker, his intestate, and undue and improper influence exerted upon him, amounting to moral coercion, by Foster, the defendant. Upon the trial, Judge *Hill* permitted the plaintiff to prove the insanity of the intestate, by giving in evidence the public opinion and reputation of the neighborhood, in relation to his insanity. Such testimony, for example, as this : "he was esteemed an idiot in Oglethorpe County." Exception was taken to the admission of this evidence, at the trial. We think the Circuit Judge erred in admitting it.

Insanity may be proven, by the proof of facts and circumstances, which show the state and condition of the mind. "The state and condition of the mind (says Prof. *Greenleaf*) of the party, is proved like *other facts*, to the Jury." Insanity, a state or condition of the mind which renders a party incapable of contracting, and which, when proven, annuls a contract, is demonstrable by facts and circumstances, which show it to exist—such as his acts, his sayings, and his appearance. The best evidence of which the nature of the case is susceptible, must in all cases be adduced. The best evidence to prove insanity is proof of the facts and circumstances which demonstrate its existence. These facts and circumstances must be proven by the production of witnesses to testify to them. They are capable of proof, as are any other facts or circumstances, which are required to be proven, and upon which the rights of parties depend in a Court of justice. The highest and best evidence in this case, is the testimony of persons who, from their own knowledge, will swear to their existence.

Public opinion, as to a man's insanity, is hearsay evidence. One swearing to the existence of such opinion or reputation, swears only to what he has heard from others—from a whole community, if you please. He swears to no *facts* which show to the Jury the state or condition of the party's mind. He swears to what others have said. From such testimony, the Jury who are to try the question of sanity, derive nothing upon which to base a judgment of their own. If, upon such evidence, they were allowed to find a verdict, it would be predicated alone upon the opinion of other men, not expressed to them, not upon oath, not subject to cross examination, and communicated through one who may have erroneously conceived it, or presented it, or who may

himself be prejudiced by it.  *He* is not guilty of perjury if the party be ever so sane.  *He* is testifying only to the existence of a *public opinion*—a thing very difficult to define—which may be one thing to-day and another to-morrow—which may exist without reason, or facts, or knowledge, and may be changed in a week without reason or cause.  And in addition to all this, the witness who is sworn, is the judge of what is public opinion or reputation, and that too, under circumstances which relieve him of much of that responsibility which ordinarily attaches to the delivery of testimony on oath.

"If," says *Buller*, "the first speech were without oath, another oath that there was such speech, makes it no more than a bare speaking, and so of no value in a Court of Justice."  *Buller, N. P.* 294.  And that is all that can be said of it.  Against all such testimony, the law sets its face as a flint.  "Hearsay evidence is uniformly held incompetent to establish any specific fact, which in its nature, is susceptible of being proved by witnesses who can speak from their own knowledge."  1 *Greenl. sec.* 99.  Now, insanity, if not a *specific fact*, is a *state* or *condition* of the mind.  And as men cannot see, touch, hear, and with omniscient ken, determine the state or condition of the mind—as intuition cannot establish it—they are left to ascertain it, by facts and circumstances.  And when it becomes necessary for a Jury to determine it, they too are to judge through facts and circumstances; and the facts and circumstances upon which they are to place their judgment, must be presented to them by witnesses under oath.  If *reputation* of *insanity* is competent, then *reputation* of *sanity* must be also.  By this kind of evidence a fool may be proved a wise man, and a philosopher a fool.  Public opinion declared *Copernicus* a fool, when he promulgated the planetary system; and *Columbus* a fool when he announced the sublime idea of a New World.  Hazardous in the extreme would it be to the rights of parties under the law, if they were allowed to depend upon the opinion of a neighborhood of the sanity of individuals.  Hearsay evidence is excluded, because a witness ought to be subjected to cross-examination—that being a test of truth.  It ought to appear what were his powers of perception—his opportunities of observation—his attentiveness in observing—the strength of his recollection, and his disposition to speak the truth.  It supposes

better evidence, which might be produced. Besides, it is intrinsically weak and incompetent to satisfy the mind.

There are, however, some exceptions to the rule, that hearsay evidence must be excluded. Proof of *pedigree* is one. Evidence by hearsay, to prove pedigree, is restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore, interested in the succession in question. 13 *Vesey*, 140, 147. *Cowp.* 591. 13 *Vesey*, 514. 2 *Bing.* 86. 2 *Russ.* & *My.* 147, 156. 1 *Crowp. Mees.* & *Ros. R.* 919, 928. 17 *Peters*, 213. 18 *Johns.* 37. 2 *Conn.* 347. 4 *N. Hamp.* 371.

It is admitted, upon the ground of the interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connexions of the family. It is not pretended that this case is within this exception. Another exception is, where declarations are admitted as being part of the *res gestæ.* These are, however, according to Mr. *Greenleaf*, rather in the light of original evidence; and he enumerates some other apparent exceptions, which he regards in the same light. There are other exceptions—such, for example, as relate to matters of public and general interest—as a claim of highway, or a right to a ferry. Reputation, as to these matters, is admitted upon the ground of the interest which all have in its truth, and the consequent probability that it is true. 1 *Greenleaf*, 157.

In this case, there is no public matter involved. It is a question which affects only the parties litigant—it does not fall within this exception. Another exception relates to ancient possession, and ancient boundaries; another to the declarations and entries of deceased persons, against the interest of the persons making them; another, to dying declarations; another to the testimony of witnesses dead, absent or disqualified; not one of which embraces reputation as to insanity. This case is therefore subject to the general rules, and by them, in the judgment of this Court, the evidence was improperly admitted.

In the case of *Potts'* will, argued at this term of this Court, we held that *the opinion* of a witness, as to the sanity of the testator, was not admissible, unless he states the facts upon which his opinion is formed. If the opinion of a sworn witness in open Court is inadmissible, *a fortiori*, the opinions of men not being on oath, as testified to in Court, are inadmissible. ( *Which case see post.* )

It was insisted by the counsel for the defendant in error, that if

we should believe that the Court erred in admitting this evidence, yet this case ought not to be remanded for a new trial, because, wholly independent of the illegal testimony, there was evidence enough before the Jury to authorise their verdict. We have looked into the record, and find that the evidence as to the sanity of the plaintiff's intestate, is conflicting. When the evidence is conflicting, the case must go back. Only where the evidence will *plainly* and *justly* authorise the finding, without the illegal evidence, will we decline to send the case back. It must be a case where we are free from all doubt, that the Jury would have found as they did, had the illegal evidence not been before them. This is not one of those cases. Upon the question of insanity, it is impossible for us to say that the illegal testimony had no effect upon the mind of the Jury. There is a good deal of evidence going to prove the sanity of the intestate of the plaintiff. Nor is it clear to our minds, that excluding altogether the issue of insanity, the Jury would have been *compelled* to find for the plaintiff below, upon the other issue of fraud by undue influence. Upon both issues taken together, it is still more doubtful whether the Jury would have been constrained to find as they did, without the illegal evidence. We think it may have had its effect on the Jury in reference to both issues. The question of mental vigor is involved in the question of fraud, since it is easier to influence unduly and fraudulently, a weak than a strong minded man. Were we the Jury, we might have found as the Jury did find. But that is not the question. The exception to the testimony, too, was taken on the trial. It is not, therefore, a question, how far we will control the discretion of the Court, in refusing or granting a new trial. The case must go back.

[2.] The other points made, grew out of a rule for a new trial. It is claimed that the Court erred in instructing the Jury, that if they found for the plaintiff, the form of their verdict should be in the alternative, finding so much money for the plaintiff, to be discharged by the delivery of the property within a certain time. The Jury found for the plaintiff a sum in damages, which might be discharged by the delivery of the negroes within a specified time. Thus, we are called upon to say, whether we will change the form of the verdict in trover, which has been used in our Courts, so far as I know, since the organization of the Government. Our Courts have held, not that the verdict should be, in all ca-

ses, in what is usually called the alternative, but that it is competent for the Jury to find in that form, or not, according to the circumstances of the case. The verdicts thus rendered, are not strictly in the alternative; they are verdicts, generally, for damages, with a condition in favor of the defendant, that he may, if he will, discharge them, by delivering the property sued for; they go upon an idea favorable to the defendant; they give him the privilege, if most convenient or most beneficial to him, of discharging the verdict by a surrender of the property. It is true, too, that such a form may be used to favor plaintiffs. There are cases where he wants the specific property, and would not feel compensated for its loss in any amount of damages. As for example, in case of a suit brought for an ancient piece of family plate, or for a peculiarly valuable and attached servant. In such case, this form enables the Court and Jury to coerce the delivery of the property, by finding against the defendant, excessive damages. And thus, *trover* is made to subserve the purposes of the obsolete action of *detinue*. There is no doubt but that in England the recovery in trover is generally in damages; the fluctuating value of personal property makes it necessary that it should be; the principles upon which the action is founded, require it; yet, in England, it has been ruled that, where trover is brought for a chattel of unchangeable value, the verdict may be discharged, by surrender into Court of the property. *Fisher vs. Price*, 3 *Burrow*, 1363, '64, '65. And perhaps this is the source from which sprang the idea, in Georgia, of permitting the damages to be discharged by a delivery of the property. We think the practice a good one. Our people and the profession are familiar with it, and we have reason to believe, satisfied with it. It has rested for many years under the eye of the Legislature, and they have not thought proper to change it, but in several instances have impliedly sanctioned it. We do not see that there is in it any principle violated, or rule of expediency infringed, and we shall not disturb it.

[3.] The plaintiff in error claims that the Court erred in charging the Jury, that if they should find for the plaintiff, they should estimate the value of the property at the highest price proven. The reason given by the presiding Judge for this instruction is, the discharge of the verdict by the return of the property.

In this case, the witnesses varied in their judgment of the value of the negroes—some proving a higher value than others. The

question made here, is not what is the criterion of damages, where the value fluctuates from the conversion to the trial. Whether the value, at the time of conversion, or at some intermediate time between the conversion and the trial, or at the trial, or an aver-age value, derived from the different valuations, be the rule, we express no opinion. When the property is of an undeviating value, what is proven to be its worth when converted, seems to be the criterion of damages. What it is when the property is pro-ven to be worth different prices at different times, I say, we ex-press no opinion.* The proof in this case, all relates to the price of the negroes at the *same time;* and the instruction was, that the Jury find according to the highest price proven. Allowing, as we do, the alternative verdict, yet, we dissent from the opinion of the learned Court below. That there are cases, as before intima-ted, where the Court might instruct the Jury to find the highest price proven, we cannot doubt. Cases where, for reasons appa-rent from the whole case, the object of the plaintiff is to recover the specific property. This is not a case of that kind. Moreover, the Court has laid down a rule here, without any qualification and applicable equally to all cases—that is, that inasmuch as the dam-ages may be discharged by a return of the property, therefore, the Jury must find the highest price proven. The criterion of damages, as a general rule, is the *true value* of the property—that is the rule of the law in trover. The Court below did not so instruct the Jury. His instruction was, that the rule of the law is this, to-wit: the criterion of damages is the *highest value proven.* The Jury are to find what is the true value from all the evidence; it is their province to judge of it, weigh it, reconcile conflicts, and thus arrive at the true value. They *may* find the highest price proven, because they may believe, from all the evidence, that that is the true value. But they may believe, from want of credibility in the witness, or a want of judgment, or of opportunities of forming a correct judgment, or on some other account, that the highest price proven is not the true value. They should not, therefore, be held bound by the highest price proven. Whilst they may find that price, *non constat* that they must. If the instruction of the Judge be considered as asserting no rule of law, but as an instruction merely upon the facts of this particular case—

---

*See *post.* *Schley vs. Trustees of Bedingfield.*—[Rep.]

Foster *vs*. Brooks.

as directory to the Jury on the testimony—still, it is erroneous. The Court may express an opinion on the facts, but it must accompany that opinion with a declaration that it is the province of the Jury to find the facts.  A Judge has no right to *instruct* the Jury how they shall find on the facts.  The language of the Court in this case, is that of *instruction*.  The bill of exceptions represents him as charging the Jury, that they *should* find according to the highest price proven, without submitting to them, that it was, notwithstanding, their right to determine on the facts.  *Anderson et al. vs. The State of Georgia, 2 Kelly, 370.  Stell vs. Glass, 1 Kelly, 475.  Holder vs. The State of Georgia, 5 Ga. R. 441.  Beall vs. Mann, 5 Ga. R. 471.*

[4.] It is farther complained, that Judge *Hill* erred in refusing a new trial, on the ground of the misconduct of one of the Jury who tried the cause.  The juryman, it seems, after being charged with the case, departing from his fellows, (whether with or without leave to disperse, not appearing,) and before, as I infer from the record, they had retired to their box, made the following remarks in the hearing of several persons not being members of the Jury, to-wit : " That he (the defendant) could not hold the property—that he had exhibited a little piece of paper about as big as a man's hand as his title, and that he believed that Foster (the defendant) had never paid anything for the negroes any more than he had."  We cannot say that in strictness, this is a good ground for a new trial.  And as the granting or denying new trials is within the discretion, the sound legal discretion of the presiding Judge, we would not send this case back on this ground alone.  Yet, we believe that the conduct of this juryman was an act of serious indiscretion, and justly meriting judicial censure.  We cannot well be too strict in maintaining the purity of the trial by Jury. We would rejoice to be able to impress upon the mind of the country a proper sense of the delicacy and solemnity of that trust which the law delegates to jurymen—a trust, in the exercise of which is involved, in an eminent degree, the power of the Courts to administer general justice—in which is involved the peace of society, the life, liberty, property and character of every citizen in the republic.  Juries should believe, that when acting as such, they are consecrated men, set apart for a peculiarly solemn duty. They should not only act right, but avoid the appearance of acting wrong.  The conduct of jurymen should be such as to repel

Foster *vs.* Brooks.

all thought, on the part of every man, that they are at all approachable. Any conduct which tends to break down the public impression, that they are utterly above and beyond all attempts at external control, is wrong. Most assuredly, conduct which invites or which seems to invite such attempts, is reprehensible. It does not appear that the remarks of this juryman were preceded or followed by remarks from those whom he addressed; and yet, it is difficult to believe that they were not. If others had addressed him in relation to the case in his hands, I should hold it good cause for a new trial. A statement by a juryman, of a part of the evidence, and an expression of opinion as to the rights of one of the parties, (this case,) does not necessarily imply corruption—an honest, independent man might do all that. But to warrant a new trial, it is not necessary to show that the juryman acted corruptly. The law will guard the trial by Jury from the chances of being corrupted. The volunteer remarks of this juryman might be construed by the by-standers, into *an invitation to them* to express their opinions. The juryman laid himself open to the attempts of the world, upon his mind and his integrity. It might be the means which an honestly disposed but timid juryman would resort to, to ascertain the out-door sentiment, as to the cause, in order that he might act upon it. Or it might be resorted to by a shrewd and dishonest juryman, to learn the out-door opinion, that he might carry it into the jury-box, and thereby control the verdict of his fellows.

In every point of view, and many views might be taken of it, the conduct of the juryman in this case was highly censurable.

Let the judgment be reversed.