· WALTER O. TAYLOR *vs.* NICHOLAS S. WINSOR.

JULY 7, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Negligence.  Independent Contractor.*

Where it appeared that defendant employed X. to draw wood from the place where it was cut; that the wood was piled in a public highway; that defendant knew, prior to the accident, that some of the wood had fallen into the highway, and had given orders to his teamsters to remove some of the wood from the top of the pile, to avoid danger, even if X. was an independent contractor, defendant, knowing the dangerous condition of the pile, exercised such acts of ownership and control over it as to become responsible to third persons for any injuries therefrom.

(2)  *Public Nuisance.*

Upon the facts stated, instruction of the court that the acts of defendant and the acts of X , carrying out instructions to place the wood on the highway, created a public nuisance, was correct.

(3)  *Jurors.  Remarks of Jurors pending trial.*

During a trial, one of the jurors remarked that plaintiff had a good case; another juror had a conversation at his home in which a member of his family conversed with him about the case and stated that she knew all about it.

*Held,* that, under the rule in *Clarke* v. *South Kingstown,* 18 R. I. 283, while improper, it did not entitle defendant to a new trial.

(4)  *Damages.*

In an action on the case plaintiff recovered a verdict for $14,000, which was reduced by the trial court to $6,500.   On plaintiff's exceptions the Supreme Court remit case, with directions to grant new trial solely on question of damages unless plaintiff remit all of verdict in excess of $10,000.

TRESPASS ON THE CASE for negligence. Heard on exceptions of both parties. Case remitted, with instructions to grant new trial on question of damages, unless plaintiff enter remittitur of verdict in excess of $10,000.

BLODGETT, J. This is an action for the recovery of damages for injuries received by reason of the falling of a pile of wood belonging to defendant, and piled within the limits of the highway between Harmony and Chepachet, on which the plaintiff was driving, frightening his horse and overturning his carriage, and throwing the plaintiff upon the ground, severely injuring him. The plaintiff recovered a verdict for $14,000, which the trial court ordered to be reduced to $6,500, or a new trial, on the ground of excessive damages, would be granted. The plaintiff refused to enter a remittitur as aforesaid, and has excepted to the reduction of the verdict, and the defendant has also taken various exceptions to the rulings of the trial court.

Those of the defendant's exceptions which are contained in paragraph one and two of the bill are disallowed and over-ruled. They relate to the admission of testimony by the plaintiff as to the dangerous condition of the pile, and defendant offered evidence on the same subject in defence.

Two exceptions to the charge of the court were taken, as follows: "The defendant excepts to that part of the charge to the effect that, under the evidence, the defendant is responsible for the manner in which Mr. Maier packed the wood. Also to that part of the charge to the effect that the wood was a public nuisance."

(1) As to the first of these exceptions, it is admitted by the defendant that the wood was his, that he had employed one John Maier to draw it from the place where it was cut, as follows (Rec. p. 1095): "He was to draw it out for fifty cents a cord. I asked him to see Mr. Steere and see if arrangements could be made to leave it in a lot where I had had some previously; if not, he would have to put it outside in the highway." It is undisputed that this pile was about one hundred and fifty feet in length, of approximately eight feet in height for at least most of its length,

was composed of sticks of firewood, cut in the ordinary lengths of four feet, and arranged in two tiers, within the limits of the highway and on one side of it upon a slight embankment, and had been there for several months prior to the accident, the pile varying in size somewhat from time to time as the defendant's teams carted away portions of it to customers and as the wood so removed was replaced by new supplies so carted by Maier from the wood-lot to the pile.   Maier testifies (p. 976) that he had drawn more than fifty cords to the pile before the accident, but how much more he did not know; possibly fifty cords more (p. 979).   He drew two hundred and one cords in all to the pile.   He began drawing wood to the pile in December, 1903, and the accident occurred on March 28, 1904.   The defendant knew that some of the wood so piled had fallen in the road before the accident, as evidenced by his testimony (p, 1117):

"Q.   Well, you do know they were drawing wood from Hick's Hill?   A. Yes, that is, when I sent them.   Q. And that was before the accident?   A. Yes, sir.   Q. So that you gave specific orders to your teamsters to take wood from this particular pile previous to the accident?   A. Yes, sir.   Q. And was that because some of the wood had fallen down into the road?   A. They came home and reported that they had loaded some wood out of the road.   Q. And that was before the accident, wasn't it, Mr. Winsor?   A. About a week, I think. Q.   So that of your own knowledge a week before the accident your teamers had reported that they had taken wood out of the road?   A. Yes, sir.   Q. And was it because that wood was in a falling condition that you gave particular orders to take from that pile?   A. No, sir.   They had been drawing from there prior to finding any wood in the road.   Q. What was there about this particular pile that you gave instructions to draw from?   A. They said they gathered some up from the roadside and I suggested if it was high to go—when they went there to take off a few feet across the top.   Q. Did you give orders to take two feet off the top?   A. I didn't say two feet.   I said a few feet.   Q. Why did you give orders to take a few feet off of the top?   A. Well, it would be easy to load and for them to do it if there was any danger of falling.   Q. So in order to save

danger from this pile falling you gave orders to have a few feet taken off the top of the pile; that is right, isn't it, Mr. Winsor? A. Yes, sir. Q. And that was before the accident to Mr. Taylor, wasn't it? A. Yes, sir." Even if Maier was an independent contractor, as claimed by the defendant, the owner of the wood unquestionably, by this testimony, knew of its dangerous condition and exercised such acts of ownership and control over the pile as to bring himself within the rule laid down by this court in *Read* v. *East Providence Fire District,* 20 R. I. 574, 578: "That as a general rule, an independent contractor, and not the owner, is liable for all damages to third parties resulting from his negligence while the work is in progress and under his exclusive control and has not been accepted by the owner, as contended by the defendant, is well settled by all the authorities, many of which are cited in his brief." See cases cited. "This rule is based upon the general proposition, which is certainly well founded in reason, that one person is not liable for the acts or negligence of another, unless the relation of master and servant exists between them. But it is not applicable to the case at bar, for the reason, as we have already seen, that here the evidence shows that the owner, without formally accepting the work, stepped in and assumed practical control of the structure by appropriating it to the use for which it was erected. And by so doing, as to third persons at any rate, it treated the structure as its own and became responsible for injury therefrom to the same extent as if there had been a formal acceptance thereof."

This exception must be overruled.

(2) The trial court instructed the jury that "the act of Mr. Winsor and the act of John Maier carrying out instructions to place the wood on the highway was contrary to law; that is, it created a public nuisance." This instruction was correct.

In *Commonwealth* v. *King,* 13 Met. 115, the defendant was indicted for obstructing a highway on the following facts: "It was also admitted by the defendant, that he, in October, 1846, erected about six rods of stone wall, a little less than a rod within the lines of said highway, and between the travelled way and his land, for the purpose of enclosing that part of the

highway, around which said wall extended, with his land, and as a part of it.

"The defendant then offered to introduce evidence tending to prove that the part of said highway, where said wall was erected, and the space between said wall and the exterior line of that side of said highway, had never been wrought nor prepared for travel, either by said turnpike corporation or by any persons; that the same had never been used for travel, and could not be travelled over, by reason of the ledges, rocks and stones, in the place where said wall was erected, and in said space; that there was, after the said wall was erected, as ample and convenient room for all travel on said highway, as there was before; and that said wall did not, in any degree, obstruct or hinder the travel on said highway. But the court ruled, that such evidence, if admitted, would not constitute a good defence to the indictment, and refused to admit it. The jury found the defendant guilty, and he filed exceptions to the ruling of the court." Dewey, J., in delivering the opinion of the court, said (pp. 118–120): "The next inquiry is, whether the facts alleged constitute an offence at common law. Upon this point we have no doubt. By the location of a public highway, with certain defined exterior limits, the public acquire an easement co-extensive with the limits of such highway. Whoever obstructs the full enjoyment of that easement, by making deposits, within such limits of the located highway, of timber, stones or other things, to remain there and occupy a portion of such public highway, is guilty of a nuisance at common law.

"It was contended by the counsel for the defendant, that the rights of the public are confined exclusively to the made or travelled road, or to that part which might be safely and properly used for travelling; and that a deposit of timber, stones or other articles, upon a part of the located highway which, from its want of adaptation to use for travel, could not be thus enjoyed,—as a portion of the way on which there was a high bank, or a deep ravine,—would not subject the party to an indictment for a nuisance upon the highway. This principle is supposed to be sanctioned by the decisions of this court in reference to the rights of travellers, holding that such

travellers are to use the travelled or made road, and that if such road is of suitable width, and kept in proper repair, the town may have fully discharged its duty, although it has not made and kept in repair a road of the entire width of the located highway. But there is a manifest distinction between the two cases. In the case supposed, the traveller has all the benefits of a public way secured to him. He only requires a road of proper width, and kept in good repair. But the town, on the other hand, to enable itself to discharge its obligation to the public, requires the full and entire use of the whole located highway. The space between the made road and the exterior limits of the located highway may be required for various purposes; as for making and keeping in repair the travelled path; for making sluices and water-courses; for furnishing earth to raise the road. And, not unfrequently, from the location of the road and from its exposure to be obstructed by snow, the entire width of the located road is required to be kept open, to guard against accumulations of snow that might otherwise wholly obstruct the public travel at such seasons.' For these and other uses, in aid of what is the leading object, the keeping in good repair of the made or travelled road, the general easement in the public, acquired by the location of a highway, is co-extensive with the exterior limits of the located highway; and the question of nuisance or no nuisance does not depend upon the fact, whether that part of the highway, which is alleged to have been unlawfully entered upon and obstructed by the defendant, was a portion of the highway capable of being used by the traveller. Whether it be so or not, an entry upon the located highway, and occupation of any portion of it by deposits of lumber, stones, &c., would be a nuisance, and subject the party to an indictment therefor.

"We do not perceive any new principle to be settled in the decision of this case. It is only the frequently occurring case of an indictment for a nuisance upon a highway. Such indictment, charging acts of similar character to the present, have always been sustained as good at common law. And when an offence, punishable at common law only is alleged to be contrary to a statute, this allegation may be rejected as surplusage.

1 Chit. Crim. Law, 289, 16 Mass., 385. . . . The court are of the opinion that this offence is properly punished as an offence at common law, and that the ruling of the court of common pleas, upon the trial, was correct." And see *Morton* v. *Moore*, 15 Gray, 573–577.

The same doctrine was upheld in *Dickey* v. *Maine Telegraph Co.*, 46 Me. 483, where a telegraph wire of the defendant corporation, hanging too low over a highway, caught the upper part of a stage, in which the plaintiff was a passenger, and was the cause of its being upset, whereby the plaintiff was damaged. The court held (p. 485–7): "When a highway is laid out and opened, all persons have a right to pass upon it. By the legal laying out, and after all the requirements of the statute have been complied with, the public acquires an easement, as against the owners of the land, which extends to every portion of the road; and any person has a right to pass or re-pass, at his own risk, over any part, after it is opened, and before any work is done, or any traveled path made; and before the liability of the town to make it exists. When laid out and accepted it becomes a public highway. *State* v. *Kittery*, 5 Greenl. 259; *Johnson* v. *Whitefield*, 18 Maine, 286.

" The duties of the town in relation to preparing the way for travel are distinct from and subsequent to the laying out. The law requires the town to make and keep in repair a traveled path, of suitable and sufficient width. It does not require the town, ordinarily, to make that traveled path the whole width of the road, and towns will not be liable for obstructions on the portion of the highway not constituting the traveled path, and not so connected with it as to affect the safety of the traveled portion. *Bryant* v. *Biddeford*, 39 Maine, 193.

" But the right of travelers to use any part of a highway if they see fit, is not restricted by the limitation of the liability of the town in case of accident. A person may go out of the beaten track at his own risk, as between himself and the town, and yet be entitled to protection against the unlawful acts of other persons or corporations. Any part of the highway may be used by the traveler, and in such direction as may suit his convenience or taste. *Stinson* v. *Gardiner*, 42 Maine, 248.

"No private person has a right to place or cause any obstruction which interferes with this right on any part of the highway, within its exterior limits. The extent of the liability of the town is no measure for such private person's liability. If the owner of the fee in the land, or any other person, should dig a pit, or stretch a cord, or place a pile of stones on the highway near the outer limit, and at a considerable distance from the traveled way, and a traveler passing, using due care, should be injured thereby, it would be no sufficient answer, to his claim for damages, to aver and prove that, under the circumstances, the town was not liable. The duty of the town is to perform a positive act in the preparation and preservation of a sufficient traveled way. The duty of others is to abstain from doing any act by which any part of the highway would become more dangerous to the traveler than in a state of nature, or than in the state in which the town has left it.

"It may be true that in many cases the same principles will be applied both to towns and individuals, in determining whether a given state of facts, in relation to a particular incumbrance, constitutes a defect within the meaning of the law. But admitting the defect, the question of liability, for creating or allowing it, may require for its solution the application of very different principles, in a case against a private person, from those which would apply to a town. . . .

"The defendants contend that the 'public use of the highway is the right which the great public owns, in distinction from the private rights which individuals have of passing out of the traveled path.' We cannot concur in this view. The public use of the highway is the right which has been before defined, viz., the right of any and all persons to use the highway, to pass and re-pass, at their pleasure, on any part. It is not confined to that portion which the town is by law compelled to make and keep in repair.

"It is very clear that this company could not legally erect posts a foot only in height, and extend the wires at that distance from the ground, on the exterior limits and outside of the traveled path, if, by so doing, the use of any part of the highway was obstructed or rendered inconvenient and dangerous, or

the traveler incommoded. If any injury should arise to any such legal traveler by such erection, he using due care, the company would be liable to him. The same rule will apply, when, after erections properly made, they suffer the same to fall down, or to be out of repair, and to remain so after reasonable notice, so as to obstruct the traveler and endanger his safety.

"The instructions on this point were clear and distinct, and, in our view, correct."

The exception is overruled.

(3)    The exceptions relating to the alleged misconduct of certain jurors are substantially similar to the facts disclosed in *Clarke* v. *South Kingstown*, 18 R. I. 283, which this court held to be insufficient to grant a new trial,—"We do not think that the remark of the juror complained of is a sufficient ground to entitle the appellants to a new trial. The allegation is that during the progress of the trial, before the testimony for the appellants had been put in, one of the jurors made a remark out of court that he had no doubt that the case would go for the town. The remark was a mere expression of opinion of the juror. There was nothing in it to indicate any prejudice on the part of the juror against the appellants which would prevent him from listening to and considering the testimony in favor of the appellants, or to show that he had so conclusively made up his mind in relation to the merits of the case that it would not be changed by further evidence, or by arguments of counsel, or the instructions of the court. Though the remark was improper, it was much less objectionable than remarks of jurors which have been held insufficient to warrant the setting aside of a verdict. *Jackson, Adm'r.,* v. *Smith,* 21 Wisc. 26, 27; *Foster* v. *Brooks.* 6 Ga. 287, 297; *Taylor* v. *The California Stage Company,* 6 Cal. 228–230; *Harrison* v. *Price,* 22 Ind. 165, 168." And see *Kaul* v. *Brown,* 17 R. I. 14, and cases cited.

These exceptions are overruled.

The affidavits offered in support of the motion for a new trial are merely cumulative of the one thousand one hundred and ninety-nine pages of testimony now in this record, and do not furnish grounds for a new trial.

(4)　A careful examination of all this long record shows a conflict of testimony as to matters of fact, which the jury have passed upon and decided in favor of the plaintiff. The trial justice has confirmed that finding, and we see no sufficient ground for disturbing that finding except in the matter of damages originally awarded, which we find to be excessive.

A majority of the court are of the opinion that the sum fixed by the trial judge is smaller than the evidence warrants, and are convinced that the sum of ten thousand dollars would be adequate compensation for the injuries and damages sustained by the plaintiff. But in my opinion the action of the trial justice in reducing the amount of damages to $6,500 was correct.

The case is remitted to the Superior Court, with direction to grant the defendant's motion for a new trial, to be had solely upon the question of damages, unless the plaintiff shall on or before the thirty-first day of July, 1909, enter his remittitur of the amount of said verdict in excess of ten thousand dollars and in case of due entry of such remittitur to enter judgment on the verdict as reduced thereby.

*Thomas A. Carroll, John W. Hogan, and Walter P. Suesman,* for plaintiff.

*James Harris and Irving Champlin,* for defendant.