# WASHINGTON COUNTY.

## January Term, 1796.

PENNSYLVANIA *v.* SAMUEL LEWIS, CHA. HOBBES, ISAAC HOBBES, NATHAN LEWIS, and ISAAC BRADEN.

THIS was an indictment for the murder of *John Weston.*

1796.

On the 5th *November,* 1795, there was a wedding at *Weston's* houfe. The prifoners went there without invitation (except as to one of them). *Wefton,* who feems to have entertained fome fufpicions of them, told them, they were welcome, if they behaved themfelves well.— Nothing improper appeared till the evening, when the company were dancing in an out-houfe. Then the prifoners began to be troublefome ; fhoved the dancers off the floor ; fought fham-battles among themfelves ; and broke up the company. They ftood in a row againft *Wefton,* who was an old man of feventy-three years of age ; and, pufhing one againft another, pufhed him againft the wall. He complained that he was hurt ; and defired them to defift. They feem to have done fo then, but to have repeated this conduct, or fomething like it feveral times ; and the old man was feveral times thrown on the floor ; and, at leaft once, they feem all to have fallen above him. *Wefton* left the out-houfe, and came into the dwelling-houfe, and fhut the door. They burft it open with violence againft the fide of his head ; came in, and mocked *Wefton* ; pufhed him and his wife off chairs ;— and, after they went out of the houfe, threw ftones, &c. in through the openings, and down the chimney. The old man again went out to remonftrate with them ; and, when he returned into the houfe, faid *Ifaac Braden* and *Ifaac Hobbes* had thrown him down off his porch, and kicked him. They feem to have continued there all night, and part of next day. In the morning of next day *Wefton* walked about as ufual, but occafionally lay down on his bed, and complained of being fore. In the even-

T 4

ing he went to bed, and continued in it. That evening and the second day, he complained " that his inside was *battered to a jelly*, by the kicks and bruises given him by those fellows," meaning the prisoners ; spit blood ; was altogether unable to rise, ate nothing from the time of the beating, and drank nothing but water ; and on the third day he died. The prisoners stuck together as a party by themselves, and seemed all equally to participate in the acts of violence. There were marks of bruises on one side and thigh of *Weston*.

*Campbell*, *Pentecost*, and *Brackenridge*, for the prisoners, made two questions.

1. Was the death occasioned by the acts of the prisoners ?

2. Were those acts done with the premeditated intention of causing the death of *Weston*.

1. The cause of the death is altogether doubtful, whether intoxication, old age, or violence. If it be doubtful, you will acquit.

2. These men did nothing more than an usual frolic, according to the custom and manners of this country. There was no intention of hurt, no design of mischief, in which the malice, which is a necessary ingredient of murder, consists.

The act of assembly distinguishes murder into two degrees. It is not murder in the first degree ; for there is no evidence of any previous intention of killing. It is not murder in the second degree ; for there was no malice, no intention of injury, and the unlawful act was not a felony, but a trespass, and the killing therefore is no more than manslaughter.

In either way, therefore, the prisoners must be acquitted of murder. If their acts did not occasion the death of *Weston*, they are clear of all crime. If it be doubtful whether their acts occasioned his death, the common presumption of innocence will lead you to acquit. If their acts did occasion his death, and though their acts were unlawful, yet, being no felony, but a trespass, and without malice or intention to hurt, it is not murder. So that, at most, it can be but manslaughter. But, I think, you will say, it was not even that ; but that the death was the consequence of intoxication, and the infirmities of age. His wife died in a day or two after

him. The prifoners might as well be indicted for mur- 1796.
dering her.

*Young*, for the ftate, recapitulated and obferved on the
teftimony accurately and minutely.

It is clear, that the death of *Wefton* was occafioned by
the violence of the prifoners. You have heard, that
*Geoffry Lewis*, brother of two of the defendants, faw the
dead body with the bruifes on it, and expreffed his ap-
prehenfions, that thefe men would be hanged. Why did
they not bring him forward.

We have no cuftom in this country of killing old men
at weddings. The *Indians* have a cuftom of killing one
another when drunk ; and if we indulge fuch practices,
as have appeared in this cafe, we fhall foon be as barba-
rous, as the favages of the wildernefs.

He who wantonly does an unlawful act, likely to occa-
fion the death of another, is guilty of murder. Malice
is a heart regardlefs of focial duty, and fatally bent on
mifchief.

The prifoners came to *Wefton's* houfe, and were hof-
pitably received. But inftead of having their hearts
foftened by fuch kindnefs, they continued their abufe of
a poor old man, in his own houfe, againft his repeated
remonftrances, till by the violent and repeated injuries,
they occafioned his death.

If they were for fighting, why not attack young per-
fons like themfelves. It is equally felony, to kill a
drunk man, as to kill a fober man. If age may be killed
by fmall violence, lawfully, fo may infancy. Both ought
to be peculiarly protected.

PRESIDENT went over the teftimony and ftated the
fubftance of the cafe.

The firft queftion for you to determine is whether
any act of the prifoners, or any of them, to which the
reft ftanding by gave their countenance and affiftance,
caufed the death of *John Wefton*. If it did not, there is
an end to any further queftion ; there is no homicide ;
and the defendants muft be acquitted. If there be a rea-
fonable ground of doubt, you will alfo acquit them.

The evidence was then applied to each of the pri-
foners.

Weight is due to the declarations of a dying perfon,
after the mortal blow has been given. Relative to this,

there is a fine reprefentation by lord chief baron *Eyre*; " Now the general principle, on which this fpecies of evidence is admitted, is, that they are declarations made in extremity, when the party is at the point of death, and when every hope of this world is gone; when every motive to falfehood is filenced; and the mind is induced by the moft powerful confiderations to fpeak the truth: a fituation fo folemn and fo awful is confidered by the law, as creating an obligation equal to that which is impofed by a pofitive oath adminiftered in a court of juftice."

But if it appear to you, that any act of violence, committed by the prifoners, caufed the death of *Weston*, it will remain for you to confider, with our affiftance in points of law, what name the law gives to this act or acts of violence caufing the death.

The fame confideration will remain, from whomfoever of the prifoners this act of violence came: for they appear all to have been of one party in this outrage; all prefent and either acting or aiding and abetting, therefore, all guilty as principals in the crime.

It makes no difference, though the violence was fmall, fuch as would not have killed a ftrong or healthy man. If it fhorten life a day, it is the fame as if it fhortened it ninety years. It would be the fame thing, if the perfon killed had had a mortal difeafe on him. All muft die fome time: and fhortening life is taking it away. Weaknefs and old age ought to be particularly guarded from injury, and treated with tendernefs.

By the law of *England*, all unlawful killing is prefumed murder, until fome extenuating circumftances are fhewn by the prifoner, leffening the degree of the offence to fomething lower than murder. Malice is prefumed, till want of malice is fhewn. For the law holds the perfon of a man facred.

Malice is exprefs or implied.

Malice is implied from the outrageous circumftances of the act fhewing a cruelty of difpofition, a heart regardlefs of focial duty, and fatally bent on mifchief.— Malice is a technical expreffion, and means the abfence of any excufe of homicide.

But I apprehend, by our act of affembly, an unlawful killing, though it may be prefumed *murder*, will not be

presumed murder *in the first degree*. It appears to have been the intention of the legislature to distinguish between malice express and implied; and to leave the punishment of death to the cases of express malice there mentioned; and, for that killing, which involves only implied malice, generally, the act provides the punishment of imprisonment and labour.

*1796.*

It is not necessary, in order to imply malice, that there should be an intention of killing. If the act of killing be unlawful, with the intention of hurting the deceased or any other person; if it have a natural tendency to bloodshed, or if killing be the probable or apparent consequence; malice is implied. If a man do an act which apparently must do harm, with an intent to do harm, and death ensues, it will be murder.

1 *Hawk.* 127-8.—*Foster* 258.—4 *Com.* 192-3.—2 *L. Ray* 1488.

According to the law cited by the counsel for the prisoners, it might have been but manslaughter, if they had killed one of themselves *sham-fighting* by consent. But the violence to the old man was without his consent, and contrary to his remonstrance.

1 *Hale* 472-3.

If appearance of sport will exclude the presumption of malice, sport will always be affected, to cover a crime.

If the death was occasioned by the violent acts of the prisoners, and if those acts were done, with a design to kill, it is murder in the first degree; and if done without a design to kill, if with a design to hurt, and tending to bloodshed or death; it is murder in the second degree; if without such intention, it is manslaughter.

The jury returned with a verdict finding them guilty of murder in the *lowest* degree; and being informed, that unless they meant manslaughter, this was a conviction of murder in the second degree. They said they had considered the distinction between murder and manslaughter, and thought this was murder: and if there was no degree lower than the second, they found them guilty of murder in the second degree.

They were sentenced to an imprisonment of five years.