No. 81.—JAMES T. DICKEN, plaintiff in error, *vs.* VINSON JOHN-SON, defendant.

[1.] The opinion of a witness (other than a subscribing witness or a physician,) is not competent to prove the insanity of a grantor, unless the facts and circumstances are stated, upon which it is founded.

[2.] When a grantor goes into Chancery to avoid his own deed upon the ground of insanity, the burthen is upon him to prove it at the time the deed was executed, the law presuming sanity; but if *habitual* insanity is proven previous to the execution of the deed, the presumption of law is, that it continues to the time when the deed is executed, and the burthen of proving sanity at the making of the deed is devolved upon the other side.

[3.] In such a case, one is insane who has not strength of mind and reason equal to a clear and full understanding of the nature and consequences of his act in making a deed.

[4.] The Statute of Limitations will run against an insane person from the time of his restoration to sanity, with knowledge of the existence of the deed.

[5.] A defendant is not protected by the Statute of Limitations, unless he establishes possession in himself, or those under whom he claims, for the statutory term.

In Equity, in Warren Superior Court. Tried before Judge SAYRE, April Term, 1849.

Vinson Johnson, in 1846, filed his bill in Warren Superior Court, alleging that on 30th December, 1831, he made a deed to certain land to James T. Dicken, and on the 4th February, 1832, he made a deed to certain negroes to Dicken, "to be delivered" at the grantor's death; that the deeds were obtained improperly and fraudulently, from the fact that complainant was at the time, from bodily and mental infirmity, wholly incapacitated to make a

contract.   The bill prayed that the deeds might be given up to be cancelled.

On the trial, it was proved that Johnson and Dicken were half-brothers, and much testimony was introduced to show the incapacity of Johnson, from continual drunkenness from some time previous to the deeds to the year 1839.

There was proof that Dicken took possession of the land at the time of making the deed, but no proof of continuous possession.

Complainant offered in evidence the depositions of one Ezekiel Brown, who swore, " that he was employed by Johnson, from 1830 to 1835, and lived on the same farm with him in the year 1824 ; knew him to be deranged from the excessive use of spirituous liquors.   He was in the habit of drinking to excess, which did bring about derangement of his mental faculties.   He was repeatedly deranged—so much so that he appeared to be afraid that his own negroes would kill him, and would say that they were after him to kill him.   He never did offer to give all of his property to witness, but did offer, in 1833, to give him a negro and lot of land, without consideration."

Defendant's counsel objected to this as evidence, on the ground that it was the *opinion* of the witness as to the sanity of the grantor.   The Court overruled the objection, and defendant excepted.

Defendant's counsel requested the Court to charge the Jury, that " sanity was always to be presumed, and that unless fixed insanity was shown previous to the execution of the deeds, the burthen of proof was on the complainant to show that he was incapacitated, at the time, of making the deeds ;" and also, " that if the complainant was incapacitated at the time, yet if seven years elapsed after his restoration to capacity, before the filing of his bill to set the deeds aside, with a knowledge that such deeds existed, his right to relief was barred by the Statute of Limitations."

The Court did not give the charges as prayed, but did charge the Jury, among other things, " If the party had, at the time, sufficient mind and reason to be capable of knowing his real situation and condition—of knowing and clearly understanding what he is doing—of perceiving the effects of his acts—he cannot complain, subsequently, of the act done by him in transferring his property."   "If, from the evidence, you believe the complainant was of sufficient strength of mind to understand the nature and effects of his acts at the dates of these deeds, they cannot be set aside."

" If incapacity in the complainant be proved to have existed at any reasonable time previous to the making of the deeds, it was incumbent on the defendant to show, at the time of executing the deed, that capacity to contract was restored; that his mind had become strengthened to that degree that he understood the nature and effect of his acts." " If the deed shows that it was not to take effect, or the estate was not to be enjoyed, until the death of the complainant, the opinion of the Court is, that the Statute of Limitations creates no bar ; but if the estate is to be enjoyed immediately on the execution of the deed, and the defendant took actual possession of the property, the lapse of time should operate as a bar to the relief sought."

To which charge of the Court, and refusal to charge, exceptions were filed, and error has been assigned on the several exceptions.

Cone, for plaintiff in error.

Toombs and A. H. Stephens, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] There can be no doubt about the truth of the proposition stated in the first assignment of error. That proposition is, that a witness, (other than the subscribing witness or a physician,) called to prove the insanity of a testator or grantor, cannot give his opinion of his insanity, without stating facts or giving reasons for such opinion. Two recent opinions of this Court have recognized this rule. *Foster vs. Brooks,* 6 Ga. Rep. 291, '2, '3. *Potts et al. vs. House,* 6 Ga. Rep. 324. It is a rule of evidence well settled. I shall not farther, than by the references already made, attempt its confirmation.

In looking, however, with great care into this record, I find that the presiding Judge made no such error as that charged in the first assignment. He is stated in the bill of exceptions to have admitted the opinion of Ezekiel Brown, a witness called by the plaintiff below in rebuttal, as to the insanity of the grantor, without a statement " of facts going to show derangement." The testimony of the witness, Brown, is the only testimony in the case excepted to on any ground. His opinion as to the insanity of the

grantor was admitted, but in every instance he gave the facts upon which the opinion was based.   The witness says, " He knew him (the grantor) to be deranged," and proceeds to say, " from excessive use of spirituous liquors.   He was in the habit of drinking to excess, which did bring about derangement of his mental faculties."   Again, the witness says, "plaintiff was repeatedly deranged;" but then follow facts and sayings which are given as proofs of derangement.   " So much so, (proceeds the witness,) that he appeared to be afraid that his own negroes would kill him, and would say that they were after him to kill him." These are the only instances of the expression of opinion by the witness, Brown, and the facts and circumstances are, in these instances, stated upon which the opinion is founded.

[2.]  This was a bill filed by a grantor against the grantee, for the delivery and cancellation of two deeds, conveying property, both personal and real, upon the ground of fraud and insanity. Upon the subject of *insanity,* the defendant requested the Court to instruct the Jury, " That *sanity* was always to be presumed, and that unless *fixed insanity* was shown previous to the execution of the deeds, the burthen of proof was on the complainant to show that he was incapacitated at the very time of their execution."   The Court did not give this charge to the Jury precisely as requested, but, upon the subject of insanity, instructed them as follows:  " What is the degree of mental imbecility or alienation of intellect produced by continued intoxication, excessive drunkenness, old age, or any other cause, that will suffice to authorize a Court of Equity to set contracts aside, or cancel deeds made by a party that alleges that he was incapable of entering into such contracts ?   If the party had, at the time, sufficient mind and reason to be capable of knowing his real situation and condition—of knowing and understanding clearly what he is doing and perceiving the effects of his acts—he cannot complain, subsequently, of the act done by him in disposing of or transferring his property. Now, whether he was of this condition and strength of mind, or whether he was not, is for you to determine, from the evidence introduced by both parties ; and if, from this evidence, you believe that he was of sufficient strength of mind to understand the nature and effect of his act, at the date of these deeds, they cannot be set aside.   If incapacity, in the *terms laid down by the Court,* be proven to have existed with the complainant at any rea-

sonable time previous to the making of the deeds, for instance, during the year 1831, it is incumbent on the defendant to show that, at the time of executing the deeds, capacity to contract was restored, and that his mind had become strengthened to that degree that he understood the nature and effects of his acts.   Now, if you believe, from the evidence, that the previous incapacity did exist with the complainant, and there is no evidence of the restoration of his mind, at the date of the deeds, the conveyance should be avoided and you should find for the complainant; but if, from the evidence, you believe that the complainant, at the date of these deeds, was of that degree of mind and reason to understand the full nature and effects of his acts, the conveyances must be considered valid, and you should find for the defendant."

It seems to be agreed between the plaintiff in error and the Court below, that *sanity* is to be presumed, and that he who comes into Court to avoid his own deed, alleging his *insanity*, assumes the burthen of proving it.   There was no question made between the parties as to this point.   Nor is it denied by the plaintiff in error, that this burthen of proof as to the *insanity* of the grantor, at the time of the execution of the deeds, may be removed by proof of *insanity* at a time previous.   That is to say, one alleging insanity, must prove it at the time the instrument sought to be avoided was made ; but if he should prove his insanity at a reasonable length of time anterior to the making of such instrument, then the presumption is, that it was continuous up to the time, and prevailed at the time when the instrument was made, and it devolves upon the other side to prove a lucid interval or *sanity* at that time.   I do not, I say, understand that this proposition is controverted.   I linger here, however, for one moment, to show that this is the rule.   I apprehend the same rule prevails both as to wills and deeds, where there is an application to set aside the one or the other.   " If," says Sir *William Wynn*, in *Cartwright vs. Cartwright*, " you can establish that the party, *habitually* afflicted by a malady of the mind, has intermissions, and if there was an intermission of the disorder at the time of the act, that being proved is sufficient, and the *general habitual insanity* will not affect it; but the effect of it is this, it inverts the order of proof and presumption.   For, until proof of habitual insanity is made, the presumption is that the party agent, like all human creatures, was rational; but when *an habitual insanity* in

the mind of the person who does the act, is established, then the party who would take advantage of an interval of reason, must prove it." 1 *Phillim. Rep.* 100.

So, also, Lord *Thurlow*, in *The Attorney General vs. Parnther*, speaks to the same point. He says, " If derangement is alleged, it is clearly incumbent on the party alleging it, to prove such derangement. If such derangement be proved, or be admitted to have existed at any particular period, but a lucid interval be alleged to have prevailed at the period particularly referred to, then the burthen of proof attaches on the party alleging such lucid interval, who must show sanity and competence at the period when the act was done, and to which the lucid interval refers; and it certainly is equally as important that the evidence in support of the allegation of a lucid interval, after derangement at any period has been established, should be as strong and as demonstrative of such fact, as when the object of the proof is to establish derangement." 3 *Brow. Ch. R.* 441.

Lord *Thurlow* is held to have gone so far in this case as to say, that where lunacy has once been established by clear proof, the party ought to be proved, by equally clear evidence, to be restored to *as perfect a state of mind* as he enjoyed before his lunacy. This extreme position is controverted by Lord *Eldon*, in *ex parte Holland*, and it seems to me with good reason; for, as argued by his Lordship, the strongest mind may be reduced by the delirium of fever, and be weaker than before the delirium, yet in such a case it would be unreasonable and unjust that such a person should be subjected to a commission, or be holden incapable of making a will or executing a deed. 11 *Vesey*, 11.

*Swinburne* says, " That if it be proved that the testator was once mad, the law presumeth him to continue still in that case unless the contrary be proved." *Swinb.* pt. 2, §3, *pl.* 7. See, also, *Hall vs. Warren*, 9 *Vesey*, 611. *White vs. Driver*, 1 *Phillimore's Rep.* 88. *Groom vs. Thomas*, 2 *Hagg.* 434. *Godolph.* pt. 1, *ch.* 8, §2. *White vs. Wilson*, 13 *Vesey*, 88. 1 *Williams' Ex'rs*, 17, 18. *Evans' Pothier*, 2 *vol. appendix*, p. 25.

To return, now, to the case before me. Agreeing with the Court, as I have stated, in these particulars, the plaintiff excepts to the charge of the Court in the following words : " The presiding Judge committed error in charging, that if incapacity, *in the terms laid down in the previous part of the charge*, be proved to

Dicken *vs.* Johnson.

have existed with the complainant at any reasonable time previous to the making of the deeds—for instance, during the year 1831—it is incumbent on the *defendant* to show that, at the time of executing the deeds, capacity to contract was restored." The complaint is, that the Court erred in its instructions as to what is that insanity which, when proven to exist previous to the act, will cast upon the defendant the burthen of proving a lucid interval at the time of the act. The views of the Court on this point we have seen, and will have again to refer to. The views of the plaintiff in error, as to what is such insanity, are found in the instructions asked and before recited. In those instructions it is claimed that it must be *fixed* insanity. Now, we are to decide which is right, the Court or the plaintiff in error. It does not seem to me that there is any serious difference between them; and that, among other things, the Court in its charge means *fixed* insanity—that is, *habitual* insanity, as contradistinguished from a temporary fit of madness—the result of fever, for example, or a drunken debauch—which will pass away with the cause which produced it. Does the plaintiff in error mean, by *fixed* insanity, any more than this ? If he does, he must be held to mean an insanity so remediless and irremovable as to admit of no lucid interval, at the bidding either of man or God. Such insanity as this the law does not contemplate. For, whilst habitual insanity, when once proven to exist, will be *presumed* to continue, yet it is but a presumption and may be rebutted. The law goes also upon the presumption, that even general or habitual insanity may be cured or depart, else what absurdity to admit the other side to the privilege of proving a lucid interval. From the language used by the Court, from the character of the issue pending, and from all the facts and circumstances of the case, it is manifest that the presiding Judge did not contemplate, in his instructions to the Jury, any merely temporary derangement. If he could be so understood, there would be error in the charge. Drunkenness, for example, may render a man incapable of understanding the nature and consequences of his acts; yet continuous insanity cannot be presumed from one fit of intoxication. Many illustrations of the same kind might be given. What the Court was considering was this inquiry, to wit: " What is the degree of mental imbecility or alienation of intellect produced by continued intoxication, excessive drunkenness, old age, *or any other cause*, that will authorize a

Court of Equity to set aside a deed?"   It is in answer to this, his own interrogatory, that he declares, " If a party has, at the time, sufficient mind and reason to be capable of knowing his real situation and condition ; of knowing and understanding clearly what he is doing, and perceiving the effects of his acts," his deeds cannot be set aside ; and then negatively, he instructs the Jury, that if this amount of mind and reason is wanting, the deeds may be set aside.   He then charges, that if derangement in these terms, that is, as thus defined, be proven to exist at a reasonable length of time previous to the making of the deeds, the presumption is that it continues, and the burthen of proof is cast upon the grantee to show a lucid interval at that time.

 The Judge, we are satisfied, spoke of *general or habitual* insanity.   That must be what is meant by *fixed* insanity.   It either means that, or it means too much.   *Fixed*, in this connection, is a word not used in the books, and doubtless for the reasons I have suggested.   *Fixed* does not belong to the vocabulary of this title of the law.   Either, then, there is no disagreement between the Court and the plaintiff in error, or the plaintiff in error has the wrong of it.   In either event, his exception cannot be sustained.

[3.] That degree of insanity or *unsoundness* of mind which will authorize a Court of Equity, at the instance of the grantor, to set aside his deed, if existing at the time, is *the insanity* which, proven previously to exist, will change the burthen of proof.   So Judge *Sayre* ruled, and rightly.   It may be satisfactory to inquire briefly, whether he was right in his definition of insanity ? Whether he legally defined to the Jury that insanity, which is good ground in Equity for the cancellation of a deed ?   In defining insanity, no stereotyped form of words is necessary.   Nor is it necessary for me to go into an unprofitable discriminatory notice of *idiocy, lunacy, derangement, non compos mentis,* &c. When Equity interferes, it is upon the ground of *unsoundness of intellect,* and *the fraud* that is necessarily involved in the acquisition of property from an insane person.   If Judge *Sayre's* definitions of insanity are analyzed, he will be found to have ruled, *that if one is not possessed of that degree of mind and reason, equal to a full and clear understanding of the nature and consequences of his act, such an one is insane, so far as to authorize a Court of Equity to set aside his acts when they are injurious to himself.*   This, I believe, is substantially in accordance with the authorities.

Dicken *vs.* Johnson.

Upon the authority of Lord *Coke,* it was at one time a rule of the *Common Law,* that a man shall not be allowed to stultify himself. *Beverly's Case,* 4 *Coke,* 123. *Co. Litt.*147. *Fitzherbert, Britton and Bracton* deny that there ever was such a rule of the *Common Law.* If there was, it is exploded, as it ought to be, as opposed to justice and common sense. *Holt,* Ch. J. in *Thompson vs. Leach,* speaks of it with forceful condensation thus : "It is a rule unaccountable that a man shall not be able to excuse himself by the visitation of Heaven, when he may plead duress from men to avoid his own acts." 3 *Mod.* 301. Insanity is now a good defence at law to a specialty, and also to a parol contract in the United States ; to a specialty in England, and, with some modification, to a parol contract there. 1 *Fonb. Eq.* 46. *Yates vs. Boen,* 2 *Stra.* 1104. *Buller, N. P.* 172. 5 *Pick.* 431. 11 *Ib.* 304. 15 *Johns.* 503. 4 *Conn.* 203. 2 *N. H. R.* 435. 3 *Car. & Payne,* 50. As to insanity in criminal cases, see *Roberts vs. The State of Georgia,* 3 *Kelly,* 310. *Evans' Pothier, vol.* 2, *app. no.* 3, *p.* 28. See *Story's Eq. Jurisp.* §225, *note* 1 *on p.* 230, *also* §226 *and notes.* 5 *B. & C.* 170. *S. C. D. & R.* 618. 3 *Camp. Rep.* 126. 1 *Moody & Malk.* 105, 106, *note b.*

We are now, however, in a Court of Equity. The consent of the mind, acting intelligently, is necessary to the validity of acts done and contracts made. " Consent," says *Story,* " is an act of reason, accompanied with deliberation ; the mind weighing, as in a balance, the good and evil on both sides." *Eq. Jurisp.* §222. To give consent there must be capacity, therefore, to know and understand fully the nature of the act done, and its effects upon the interests of the agent. The want of this power to give a rational and deliberate consent, is the ground upon which Courts of Equity will set aside the contracts of idiots, lunatics and other persons *non compos mentis.* This is according to the law of na· ture, (*De Jure Belli Grotius, b.* 2, *ch.* 11, §5,) and was adopted by the *Civil Law. Inst. lib.* 3, *tit.* 2, §8. *Dig. lib.* 50, *tit.* 17, 1, 5, 1, 40.

Such persons being incapable of entering into, any valid contract, or to do any valid act, every person dealing with them, knowing their incapacity, is deemed to perpetrate a fraud upon them and their rights. " And surely," says Judge *Story,* " if there be a single case in which all the ingredients proper to constitute a genuine fraud are to be found, it must be a case where

these unfortunate persons are the victims of the cunning, the ava-
rice and corrupt influence of those who would make an inhuman
profit from their calamities." *Eq. Jurisp.* §227.

A Court of Chancery will, therefore, because of insanity, and
the fraud which the law infers from a dealing with the insane to
his injury, set aside the deed of such insane person. Such being
the principles of action in these cases, the definition of Judge
*Sayre* of that insanity which will authorize the intervention of a
Court of Chancery, in our judgment, is in accordance with them,
and, therefore, sufficient. Incapacity to assent to a contract by
reason of unsoundness of mind, is the test in Equity of the inva-
lidity of the contract. When a man, according to the charge of
the Court, is not possessed of that degree of mind and reason
equal to a full and clear understanding of the *nature* of his act—
if he cannot distinguish between a sale for value and a gift, for
example—and farther, when he has no clear and full understand-
ing of the *consequences* of his act; for example, is not cognizant
that it strips him of his property and vests it in another, or disin-
herits his children—he is to be held and taken as incapable of
consenting, *and is insane.* This may suffice for this case. To
guard against misconstruction, however, it may be well to say,
that such intellectual derangement as disables one from under-
standing, *in all cases*, the nature and consequences of his acts, is
not necessary to establish insanity; for one may reason never so
wisely and learnedly, and yet be insane as to particular persons or
things. See *Dew vs. Clarke,* 1 *Add.* 279. 3 *Ib.* 79. The objec-
tion here, however, is not that the learned Circuit Judge went too
far, but that he did not go far enough. 1 *Williams' Ex'rs,* 16 *to*
34. *Story's Eq. Jurisp.* §§222, '3, '4, '5, '6, '7, '8, '9, 230. *Shel-
ford on Lunatics, ch.* 2. *p.* 35 *to* 74. 3 *Brow. Ch. R.* 441. 1 *Fonbl.
Eq. b.* 1, *ch.* 2, §3, *note x. Evans' Notes to Pothier,* 2 *vol. app. no.*
3, *p.* 28. 11 *Vesey,* 11. 9 *Ib.* 611. 1 *Phillim.* 363. 3 *Hagg.*
605. 1 *Phillim.* 88. 2 *Add.* 445. *Ib.* 210. 5 *Russ. Ch. Cas.*
166, 167. 13 *Vesey,* 89. *Chitty's Med. Juris. ch.* 9, §5, *p.* 358,
359.

[4.] The Statute of Limitations being pleaded, the plaintiff in
error complains that the Court committed error " in refusing to
charge the Jury, that admitting that the complainant was inca-
pacitated, at the time of making the deeds, yet, if seven years
elapsed after his restoration to capacity, before the filing of his

bill, to set the deeds aside, with knowledge that such deeds existed, that complainant's right to relief was barred by the Statute of Limitations." The exception thus expressed, asserts the proposition, that mere lapse of the statutory term of years, irrespective of possession in the defendant, or those under whom he may claim, will bar a recovery. The Statute unquestionably would begin to run against him from the time of the removal of his disability and knowledge of the existence of the deeds, in favor of one holding possession; and if the possession continues for the term, the title of the defendant would be perfected under the Statute, but not otherwise. To set up a title under the Statute, it must be pleaded and proven.

[5.] The plaintiff asserting his title, will prevail, even though he may not have instituted suit within seven years from the accrual of his right of action, unless he is met by a title by possession. The Statute, in short, conveys no title, unless possession is proven. *Stile vs. Finch, Cro. Car.* 404. 21 *Pick.* 404. 2 *Ld. Raym.* 838. *Ventries,* 191. 2 *Mass.* 87. 2 *Wend.* 294. 4 *Gill & Johns.* 439. 5 *Har. & Johns.* 425. 4 *M. & Welsb. Ex. R.* 339. 3 *Scott, C. B.* 265. The only farther exception not covered by what I have already said, is stated in the assignment as follows : " The Court erred in charging the Jury, that if the deeds show that they were not to take effect, or the estate to be enjoyed until the death of the complainant, that the Statute of Limitations constituted no bar to complainant's relief."

The point of this exception is this : the Court submitted the legal effect of the deeds to the Jury, and therein is error. It was clearly not the province of the Jury to construe these deeds, to determine whether, upon their face, they took effect and passed the property at once, whether the instruments were deeds or testamentary papers. That appertained to the Court. The Court was not requested to instruct the Jury, as to the legal effect of the deeds; their *legal effect* does not appear from the record, to have been made a question. If, in the absence of a request to charge the law, as to any point growing out of the case, the Court does instruct the Jury erroneously, it is error. But we do not believe that the presiding Judge intended to submit the construction of these deeds to the Jury.

There were two deeds in this case—one of personalty, and the other of realty. One was no doubt a testamentary paper, and

the other a deed; and it was insisted in the argument that these things were conceded on the trial.   Disregarding *that*, the record discloses no contestation about their legal effect.   The Court said, " *If the deeds show* that they were not to take effect, or the estate was not to be enjoyed until the death of the complainant, the opinion of the Court is, that the Statute of Limitations creates no bar."

The Court was clearly instructing the Jury in reference to the Statute of Limitations.   Putting the matter hypothetically, if, &c. &c. does seem to leave the construction of the instruments to the Jury.   We are not, however, satisfied that the Judge so intended, and are loth to pronounce that an error which was not decided.   We shall not, on this exception, send the case back; for had the Court instructed the Jury, that one or both the deeds took effect from their date, the Jury could not have found for the defendant; for, according to the testimony, the defendant had not a statutory title, it not having been proven that he held possession for the statutory term; and although there is some evidence of his possession at one time, yet, nothing is proven from which the Jury could infer possession for the whole term.

Let the judgment below be affirmed.