## S92A0147. DANUEL v. THE STATE.

(418 SE2d 45)

FLETCHER, Justice.

Jimmy Danuel ("Danuel") was convicted of two counts of aggravated sodomy and sentenced to two consecutive terms of twenty years. He appeals and we reverse.[1]

In 1990, Danuel's then 19-year-old daughter, Lisa Teems ("Teems"), and her husband had temporarily separated. There was discussion between the couple and their immediate families concerning a divorce and a custody battle over the couple's infant daughter. In fear of losing custody of her infant daughter, Teems had her mother contact Danuel concerning financial assistance for such a legal battle. Danuel, however, refused to get involved in the marital squabble between his daughter and son-in-law.

Shortly thereafter, Teems informed her husband and, later, law enforcement authorities that Danuel began sexually molesting her 11 years ago, in 1979, when she was 8 years old. She indicated that the molestation went on until 1986 when her parents separated.[2] At the time of the separation, Danuel moved just across the state line into Tennessee where he has lived up until the time of trial.

In November of 1990, Danuel was arrested for incest, statutory rape, and child molestation all arising from Teems' statements to the authorities. However, when the indictment against him was returned on March 4, 1991, Danuel was indicted for two counts of aggravated sodomy, one which was alleged to have occurred between November 1, 1980 and June 1, 1981, some ten to eleven years before, and one which was alleged to have occurred on or about July 2, 1985, some six years before.

1. At the time of the act alleged to have occurred between 1980 and 1981, Teems would have been between nine and ten years old. OCGA § 17-3-1 (c) provides that:

---

[1] This court has jurisdiction over the case only because Danuel challenges the constitutionality of OCGA § 17-3-2 (1).

[2] Teems' parents were subsequently divorced.

prosecution for felonies committed against victims who are at the time of the commission of the offense under the age of 14 years must be commenced within seven years after the commission of the crime.

To have been prosecuted within the statute of limitation, prosecution as to this particular act would ordinarily have to have been begun prior to June 1, 1988.

However, OCGA § 17-3-2 (1) provides:

The period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute does not include any period in which . . . [t]he accused is not usually and publicly a resident within this state. . . .

Relying upon the language of OCGA § 17-3-2 (1), the state successfully argued in the trial court that the statute of limitation had been tolled in 1986 when Danuel moved to Tennessee because Danuel had not "usually and publicly" been a resident of Georgia since that move. Over Danuel's repeated objections, the trial court permitted the state to proceed with prosecution of the act alleged to have occurred between 1980 and 1981 and charged the jury on the statute of limitation as follows:

Under our laws, prosecution for [aggravated sodomy] must be started within seven years after the offense is committed, unless it is alleged and proved that the offense comes within one of the legal exceptions to the law. I instruct you, as it applies in this case, that the period within which a prosecution must be commenced, under our laws, does not include any period in which the accused is not usually and publicly a resident of this state.

At trial, the evidence was uncontroverted that since his separation from Teems' mother in 1986, Danuel has lived just across the state line in Ooltewah, Tennessee and that Danuel's Tennessee residence is just 12 miles from both the home he had shared with his ex-wife in Georgia and the Catoosa County Courthouse in Ringgold, Georgia where he was ultimately indicted and tried. It was also uncontroverted that Teems, Teems' mother, husband, and husband's family all knew exactly where Danuel had been living since 1986; that Teems had visited Danuel in Tennessee at both his home and his place of business; that Danuel was frequently in Georgia on both personal and business matters; that he frequently spoke with Teems by telephone, sometimes calling her and sometimes being called by her at both his home and his place of business; and that Danuel never

attempted to conceal his whereabouts in such a manner as would have obstructed his arrest and/or extradition to Georgia to face any criminal charges that may have been brought against him.

2. From 1859, until the adoption of the Official Code of Georgia in 1982, Georgia law provided:

If the offender shall *abscond from this State, or so conceal himself that he cannot be arrested*, such time during which he has been absent from the State, or concealed, shall not be computed or constitute any part of said several limitations.

(Emphasis supplied.) Cobb 1859, 609, § XXXI; Code of 1861 § 4551; Code of 1867 § 4571; Code of 1868 § 4571; Code of 1873 § 4665; Code of 1882 § 4665; Code of 1895, Part III, § 30; Code of 1910, Part II, § 30; Code of 1926, Penal Code § 30; Code of 1933 § 27-601; Code Ann. § 27-601.

In 1961, the Criminal Law Study Committee was created to make a thorough study of Georgia's laws relating to criminal law and procedure and to revise those laws. Ga. L. 1961, p. 96. The committee's comments indicate that, of the three principal sources upon which its' work was based, the first was Georgia's law as it existed in 1961 and the great wealth of court decisions interpreting that law. The Criminal Law Study Committee Foreword also indicates that one of their fundamental rules was to retain as many of the existing laws as possible and that "[t]he form and arrangement might be changed to meet modern conditions, the words may be changed for the sake of uniformity, but the substance was retained wherever possible." Tentative Draft of the Proposed Criminal Code of Georgia, Criminal Law Study Committee Foreword, *reprinted in* Ga. Code Ann. Title 26, pp. 2-3 (1988).

Effective July 1, 1969, the legislature enacted what was then Ga. Code Ann. §§ 26-502; 26-503; and 26-504. The notes of the committee concerning those sections state:

These sections substantially restate the former Ga. Code Ann. provisions on limitations with the exception of subsection (c) of § 26-503, which is new.[3]

Ga. Code Ann. § 26-502 committee notes (1988). In *State v. Shepherd Constr. Co.*, 248 Ga. 1, 4 (281 SE2d 151) (1981), this court recognized and gave effect to the legislative intent expressed in that committee note when we concluded that those three Code sections essentially

---

[3] Subsection (c) of Ga. Code Ann. § 26-503 concerned the tolling of the statute of limitation for government officers or employees.

track the provisions of former Ga. Code Ann. § 27-601.

From 1969 until the adoption of the Official Code of Georgia in 1982, Ga. Code Ann. §§ 26-502; 26-503; 26-504; and 27-601 were in effect simultaneously and, as a result, for that period of time, Georgia had two sets of virtually identical statutes setting forth the statutes of limitation and exclusions therefrom for criminal actions. Other than the rearrangement of the one statute: Ga. Code Ann. § 27-601, into three separate statutes: Ga. Code Ann. §§ 26-502; 26-503; and 26-504, the difference between the two was the modernization of the language used in the three new statutes as compared to that of the older statute.

When the Official Code of Georgia was adopted in 1982, Ga. Code Ann. § 27-601 was omitted and Ga. Code Ann. §§ 26-502; 26-503; and 26-504 became OCGA §§ 17-3-1; 17-3-2; and 17-3-3. The meaning of the code sections did not change, however, and OCGA § 17-3-2 (1) continued to enunciate what has been the law in Georgia since 1859:

> If the offender *shall abscond from this State, or so conceal himself that he cannot be arrested*, such time during which he has been absent from the State, or concealed, shall not be computed or constitute any part of said several limitations.

(Emphasis supplied.) Ga. Code Ann. § 27-601.

3. "Abscond" is defined by Black's Law Dictionary, 5th Edition, as follows:

> To go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process. To hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process. Postponing limitations. [Cit. omitted.] Fleeing from arresting or prosecuting officers of this state.

The state urges that OCGA § 17-3-2 (1) should be construed to mean that whether the applicable statute of limitation is tolled depends solely upon the legal residence of the alleged offender. On the other hand, Danuel contends that such an interpretation violates the equal protection clause of both the U. S. and the Georgia Constitutions. Assuming, without deciding, that Danuel is correct in this regard, we will not interpret OCGA § 17-3-2 (1) in a manner which causes it to be unconstitutional when there is another interpretation for the statute which is long standing, logical, and constitutionally sound. Accordingly, we reject the interpretation of OCGA § 17-3-2 (1) urged by the state and hold that the subsection's meaning tracks the portion of former Ga. Code Ann. § 27-601 set forth in Division 2 of this opinion.

4. Because the evidence at trial was uncontroverted that Danuel had not absconded, there is no question that, prior to the March 1991

indictment, the statute of limitation had run on any criminal act alleged to have occurred between November of 1980 and June of 1981. Accordingly, the trial court erred in permitting the state to present evidence of that alleged act to the jury and Danuel's conviction for that act is reversed.

5. The second act for which Danuel was convicted was alleged to have occurred on or about July 2, 1985. At that time, Teems would have been between 14 and 15 years old. The statute of limitation for that act is set forth in OCGA § 17-3-1 (b) which provides that prosecution for a crime, other than murder, that is "punishable by death or life imprisonment must be commenced within 7 years after the commission of the crime."[4]

As the indictment against Danuel was returned in March of 1991, there is no problem with the running of the statute of limitation as to the offense alleged to have occurred in 1985. However, there was no evidence presented at trial to support a conviction for an act of aggravated sodomy occurring after 1982.[5] Accordingly, Danuel's conviction for the 1985 act must also be reversed.

*Judgment reversed. All the Justices concur, except Bell, P. J., who concurs specially, and Sears-Collins, J., who concurs in the judgment only.*

BELL, Presiding Justice, concurring specially.

For three reasons, I disagree with the majority's conclusion that the "abscond from this State" language of former Ga. Code Ann. § 27-601 survived the enactment of the 1968 Criminal Code of Georgia (Ga. Code Ann. Title 26; Ga. L. 1968, p. 1249) (hereinafter, the 1968 Code). First, the majority overlooks substantial evidence that the Criminal Law Study Committee for the 1968 Code (hereinafter, the Committee) intended to do away with the "abscond from this State" test of former Code Ann. § 27-601 (hereinafter, § 27-601), which cast upon the State the burden of proving that the defendant had *intended* to avoid prosecution, and in its place intended to substitute the "not usually and publicly a resident" language of former Code Ann. § 26-503 (a) (now OCGA § 17-3-2 (1) (hereinafter, § 26-503 (a)), with the specific goal of removing from the prosecution any burden to show intent by the defendant to avoid prosecution. Second, the majority opinion does not take into account opinions from other states that address the meaning of language essentially similar to "not usu-

---

[4] OCGA § 16-6-2 (b) provides: "[a] person convicted of the offense of aggravated sodomy shall be punished by imprisonment for life or by imprisonment for not less than one nor more than 20 years."

[5] Danuel was tried only for two counts of aggravated sodomy. He was not tried for rape, incest, statutory rape or child molestation.

ally and publicly a resident." Third, the majority opinion fails to recognize that § 27-601 was impliedly repealed when the 1968 Code was enacted. However, because I agree with the result reached by the majority opinion, which is that the statute of limitation was not tolled, I concur in the judgment.

1. The majority opinion overlooks portions of the Committee's foreword to the 1968 Code that manifest the Committee's intent to effect a change in the law by substituting the "not usually and publicly a resident" language for the "abscond" language.

(a) In its foreword,[6] the Committee stated that one of the "principal sources" for its work was the Model Penal Code.[7] Review of both the Tentative Draft of the Model Penal Code and its final version shows that the drafters distinguished between the standards of intent to avoid prosecution and mere absence from the state, and ultimately chose the latter standard.

The Model Penal Code was completed in 1962. The Tentative Draft had language that was equivalent to the language of § 27-601, in that it required "a purpose to avoid detection, apprehension or prosecution."[8] Model Penal Code, Tentative Draft No. 5, § 1.07 (6) (a), p. 15,[9] and Comment, pp. 26-27 (ALI 1956). The final version of the Model Penal Code rejected that approach, instead adopting a "con-

---

[6] In the foreword the Committee said that
[i]t is not intended that the committee comments be enrolled as parts of the Code, but it is intended and recommended that they be recorded permanently upon the enactment of the Criminal Code *and be considered as an expression of the legislative intent.* [Ga. Code Ann. Book 10, pp. 2, 3 (Harrison 1988) (emphasis supplied).]

[7] The Committee said that
[w]hat are the principal sources upon which the work of the committee was based? First, we have the present Georgia law with a great wealth of court decisions interpreting almost every section. . . . *The second source was the Model Penal Code* prepared by a great number of prominent lawyers, judges and law teachers under the guidance of the American Law Institute. The third source was the weight of the authority in other states such as Wisconsin, Illinois, Louisiana, New York and Connecticut, which have gone through similar experiences in recent years and have graciously supplied this committee with the material used in their work. The fourth source was the constructive ability of the Research Group and the practical experience of the members of the committee. [Ga. Code Ann., Book 10, pp. 2, 3 (Harrison 1988) (emphasis supplied).]

[8] The term "abscond" in § 27-601 required a similar purpose. As the majority opinion points out, "abscond" is defined as follows:
to go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process. To hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process. Postponing limitations. [Cit.] Fleeing from arresting or prosecuting officers of this state. [Black's Law Dictionary, 5th ed., p. 8.]

[9] Section 1.07 (6) of the Tentative Draft provided that [t]he period of limitation does not run:
(a) during any time when the accused, *with a purpose to avoid detection, apprehension or prosecution,* is outside the state. . . . [Model Penal Code, Tentative Draft No. 5, § 1.07 (6), p. 15 (ALI 1956) (emphasis supplied).]

tinuously absent from the state" standard. Model Penal Code and Commentaries, § 1.06 (6) (a), p. 85 (ALI 1985).[10] The comment to § 1.06 shows that, for policy reasons, the drafters of the Model Penal Code felt that the broader approach of the final version, which eliminated the necessity for showing any intent to avoid prosecution, was the superior approach.[11] Id. comment, p. 98. The standard finally adopted by the Model Penal Code is the functional equivalent of § 26-503 (a), which likewise has no intent element.

Because it expressly relied upon the Model Penal Code as a source, the Committee was aware of the distinction that the Code drew between the intent and the mere absence standards, and was also aware of the Code's choice of the latter approach as expressing the better view. It is difficult to avoid the inference that the Committee, in drafting § 26-503 (a) to have no element of intent, intended to follow the reasoning and choice behind the final version of the Model Penal Code.

(b) Another of the "principal sources" for the Committee's work "was the weight of the authority in other states," and in that regard the Illinois Criminal Code of 1961 was of special interest to the Committee. In its foreword to the 1968 Code, the Committee noted that

> [w]hen the Criminal Law Study Committee had completed its organization, Illinois had completed its new substantive Criminal Code which was enacted into law in August, 1961. It took Illinois six years to do the work. *Professor Charles H. Bowman*, of the University of Illinois School of Law, *Chairman of the Illinois Drafting Subcommittee*, gave the Criminal Law Study Committee helpful information on the mechanics of writing the Illinois Criminal Code, and special

---

[10] Section 1.06 (6) (a) of the final version of the Model Penal Code states that [t]he period of limitation does not run:
(a) during any time when the accused is continuously absent from the State. . . .
[Model Penal Code and Commentaries, § 1.06 (6), p. 85 (ALI 1985).]

[11] The comment for Section 1.06 says that
[s]ubsection (6) specifies two situations in which time is not counted as part of the period of limitation: (a) [one situation is] when the defendant is continuously absent from the state. . . .
[One respect in which] Paragraph (a) differs from pre-Code statutes [is that] *the defendant's motivation for leaving the jurisdiction is wholly immaterial.* [Footnote: "As first drafted, the Code provision required that the accused leave the state for the purpose of avoiding detection, MPC § 1.05, T.D. 5 (1956); however, after discussion by the Institute this requirement was deleted, *see* ALI Proceedings 132-36 (1956)."] . . . *The Code position is based on the view that the justification for tolling the statute is not the defendant's blameworthiness but rather the difficulties of detection and apprehension. Moreover, the state's burden of proving motivation was considered to be unnecessarily harsh.* [Model Penal Code and Commentaries, p. 98 (ALI 1985) (emphasis supplied).]

appreciation is due to Professor Bowman for his advice and continuing interest.

. . .

[One of the principal sources for the Committee's work] was the weight of authority *in other states such as . . . Illinois,* . . . which have gone through similar experiences in recent years and have graciously supplied this committee with the material used in their work. [Ga. Code Ann., Book 10, pp. 2, 3 (Harrison 1988) (emphasis supplied).]

Section 3-7 of the Illinois Criminal Code contains a tolling provision encompassing "not usually and publicly resident" language that is almost identical to that of § 26-503 (a).[12] As the comments to § 3-7 show, Illinois courts interpreted the "not usually and publicly resident" language of § 3-7 *as requiring no element of concealment.*[13] The comments to § 3-7 were drafted by Charles Bowman, who presumably was the "Professor Charles H. Bowman" who was the chairman of the Illinois Drafting Subcommittee and who advised the (Georgia) Committee. His written comments to the 1961 Illinois Code therefore merit special attention as a guide to ascertaining the Committee's intent.

In light of the Committee's contacts with Prof. Bowman and the Committee's express reliance upon his advice and upon Illinois law as a principal source, Section 3-7 and Prof. Bowman's comments to it

---

[12] Section 3-7 provides:

The period within which a prosecution must be commenced does not include any period in which:

(a) The defendant is not usually and publicly resident within this State. . . . [Ill. Ann. Stat. Ch. 38, Par. 3-7 (Smith-Hurd 1989); 1961 Ill. Laws, p. 1983, § 3-7).]

There is no discernible significance in the Illinois' statute's omission of the article "a" before "resident."

[13] The comments state that

[s]ection 3-7 contains three exclusions from the period of the time limitation, all of which are based upon former Illinois provisions. [Cits.] The first concerns the situation in which the offender either is absent from this State, or absents himself from his usual place of abode and makes some effort to conceal himself.

. . .

The first Illinois Criminal Code had [a] "fleeing from justice" provision, and it was re-enacted in the 1845 Code [cit.], but the 1874 revision substituted for it the present "not usually and publicly resident" provision. [Cit.] The present provision has been interpreted to require the State to allege and prove that the defendant either concealed himself within the State or was absent from the State for the period during which the limitation statute allegedly was tolled. [Cits.] Even involuntary absence from the State has been held to toll the statute. [Cit.] *Thus the element of concealment exists only when the offender remains within the State.* [Ill. Ann. Stat., Chapter 38, p. 182 (emphasis supplied).]

certainly were known to the Committee when it drafted § 26-503 (a). Moreover, the Committee adopted a tolling standard that was couched essentially word-for-word in the language of § 3-7. The compelling inference from these facts is that the Committee meant § 26-503 (a) to have the same meaning as the Illinois statute.[14]

2. The majority opinion does not take into account opinions from other states that address the meaning of provisions like § 26-503 (a). The case of *State v. Ansell*, 675 P2d 614 (Wash. App. 1984), illustrates the view of most jurisdictions in this respect. In *Ansell* the Washington Court of Appeals construed a statute of the State of Washington that had "not usually and publicly resident" language. The court surveyed the laws of other states; found that the majority view concerning such language was that it should be read *as not requiring any intent element*; and adopted the majority rule. *Ansell*, supra, 675 P2d at 616-617. By construing § 26-503 (a) as expressing nothing more than the "abscond" standard of § 27-601, the opinion of this Court delivers a holding that is inconsistent with *Ansell*.

3. The majority opinion fails to recognize that § 27-601 was impliedly repealed when the 1968 Code took effect. I reach this conclusion notwithstanding the majority opinion's reliance upon two sources as evidence that § 27-601 survived the 1968 Code. One of those sources is the Committee's observation that former Ga. Code Ann. §§ 26-502; 26-503; and 26-504 "substantially restate[d] the former Ga. Code Ann. provisions on limitations." Ga. Code Ann., Book 10, Committee Notes Ch. 26-5, p. 78 (Harrison 1988). The other source is *State v. Shepherd Constr. Co.*, 248 Ga. 1, 4 (II) (a) (281 SE2d 151) (1981). However, the majority's reliance on the Committee's use of the term "substantially restate[d]" and on *Shepherd Constr.* is misplaced.

(a) The key to understanding the Committee's use of the term "substantially restate[d]" is to note that the Committee did not say that §§ 26-502; 26-503; and 26-504 *identically* track the provisions of former Ga. Code Ann. § 27-601. Instead, the Committee said only that those Code sections "substantially" track former Ga. Code Ann. § 27-601. In fact, those sections do sometimes vary from § 27-601, and where they vary we are authorized to determine whether the variance signifies a change in the law. Viewed in this light, the reference to "substantially" does not support the majority's position that the Committee intended for the "abscond" approach to remain the law in Georgia. Moreover, in its foreword to the 1968 Code the Committee itself implied that it had changed the substance of some laws:

---

[14] By focusing only on the meaning of the corresponding Illinois statute, I do not mean to imply that it was the Committee's only source of authority from other states. The Committee itself said it had relied on authority from states other than Illinois.

> It was a fundamental rule of the committee to retain as many laws as possible, with the interpretations of the courts carefully considered. The form and arrangement might be changed to meet modern conditions, the words may be changed for the sake of uniformity, but the substance was retained *wherever possible.* [Ga. Code Ann. Book 10, p. 3. (emphasis supplied).]

The tolling provision of § 26-503 (a) is, I think, an instance where the Committee found it not possible to retain the substance of § 27-601.

(b) The majority correctly notes that in *Shepherd Constr.* this Court did state that §§ 26-502; 26-503; and 26-504 "track the provisions" of former § 27-601. However, the majority has omitted to note that *Shepherd Constr.* itself concerns a difference between § 26-503 (b) and § 27-601. That difference led us to hold that § 26-503 (b) had *impliedly repealed* the corresponding provision of former Code Ann. § 27-601. *Shepherd Constr.*, supra, 248 Ga. at 4. Accord *Kyles v. State*, 254 Ga. 49, 50-51 (326 SE2d 216) (1985) (holding that § 26-504 impliedly repealed part of § 27-601 (4)).

When a prior statute conflicts with a more recently enacted law, the later statute acts as an implied repealer of the prior law.[15] Id. Because § 26-503 (a) did not identically track the language of former Ga. Code Ann. § 27-601, and in fact conflicts with it, I would hold that the enactment of § 26-503 (a) repealed the corresponding provision of former Ga. Code Ann. § 27-601.

4. In summary, the opinion of the majority of this Court does not take into account the reliance of the Committee upon the Model Penal Code and the 1961 Criminal Code of Illinois. Both sources distinguish between the two different approaches, intent versus mere absence, and choose the latter. Due to its familiarity with those sources, the Committee likewise was aware of the distinction between the approaches, and chose to supplant the intent approach with the mere absence approach. The majority opinion also fails to address case law from other states, the majority of which have held that language essentially the same as "not usually and publicly a resident" denotes mere absence. Finally, the majority opinion misconstrues *Shepherd Constr.*, supra, 248 Ga. The proper interpretation of that case is that, even though the 1968 Code substantially tracked § 27-601, any change in the 1968 Code might operate to impliedly repeal portions of § 27-601. In the instant case, the adoption of the "not usually and publicly a resident" test in § 26-503 (a) operated to repeal the "abscond" stan-

---

[15] The General Assembly said essentially the same thing in enacting the 1968 Code, by providing that "[a]ll laws and parts of laws in conflict with this Act are hereby repealed." Ga. L. 1968, pp. 1249, 1351, § 5.

dard of § 27-601. For these reasons, it is my belief that the majority is incorrect in holding that the "abscond" standard survived the effective date of the 1968 Code.

5. In the event my view of § 26-503 (a) were to prevail, it would not require finding that the tolling provision was in effect once appellant moved to Tennessee. Instead, a reasonable interpretation of § 26-503 (a) would be that, notwithstanding appellant's change of legal residence, his regular and frequent presence in Georgia rendered him available for easy detection and apprehension, and thereby rendered § 26-503 (a) inapplicable.

DECIDED JULY 16, 1992.

*Teddy R. Price, J. M. Raffauf,* for appellant.
*Ralph Van Pelt, Jr., District Attorney, Michael R. McCarthy, Assistant District Attorney, Michael J. Bowers, Attorney General,* for appellee.