S92A1007. KUMAR et al. v. HALL et al.
S92A1008. CHAYA et al. v. HALL et al.
(423 SE2d 653)

BELL, Presiding Justice.

Appellants-defendants contend that the trial court erred by denying their motions for summary judgment against appellee-plaintiff Loretta Hall, who had filed suit as guardian and next friend of Carl William Hall. Appellants contend that the suit is barred by the statute of limitation for "persons who are legally incompetent because of mental retardation or mental illness," OCGA § 9-3-73 (b). Because we find that the suit is barred by that statute of limitation, we reverse the judgment.

During the period March 23, 1986 to March 28, 1986, Carl Hall

received medical care and treatment at Douglas General Hospital. O[n] March 28, 1986, he was moved to Emory University Hospital. On th[e] same date, he became comatose due to brain damage, and has neve[r] regained consciousness. On April 16, 1986, he underwent amputation[s] or partial amputations of his hands and feet. His mother, the appe[l]lee, was appointed the guardian of his person and property on May [2,] 1988. According to a stipulation of fact that she entered into, she ha[d] "retained legal counsel on or about March 17, 1988, to inquire int[o] and prosecute if appropriate, any medical malpractice claims arisin[g] from or associated with the hospitalization and medical care of Ca[rl] William Hall at Douglas General Hospital in March 1986. On o[r] about May 31, 1988 Counsel obtained on her and her son's behalf [a] copy of the chart of the Douglas General Hospital admission." O[n] March 22, 1991 — almost five years after the March-April 1986 pe[-] riod in which Carl Hall suffered brain damage and amputations — appellee brought suit on his behalf, alleging that his injuries were th[e] result of medical malpractice. Appellants, who either are physician[s] who cared for and treated Carl Hall at Douglas General Hospital o[r] their respective professional corporations, moved for summary judg[-] ment, contending in part that the suit was barred by a statute of limi[-] tation, § 9-3-73 (b). The trial court denied summary judgment, bu[t] granted a certificate of immediate review. The Court of Appeal[s] granted appellants' interlocutory application, and subsequently trans[-] ferred the appeal to this Court.

1. The first question for our consideration is whether the statut[e] of limitation embodied in § 9-3-73 (b) was intended to compel appel[-] lee to file suit within two years of its effective date, i.e., by July 1[,] 1989. We find that such was the legislative intent.

(a) As of the date that Carl Hall became comatose, § 9-3-71 re[-] quired that "[e]xcept as otherwise provided in this article [OCGA Ti[-] tle 9, Ch. 3, Art. 4], an action for medical malpractice [had to] b[e] brought within two years after the date on which the negligent o[r] wrongful act or omission occurred."[1] However, in conjunction wit[h] then § 9-3-73,[2] § 9-3-71 mandated that the statute of limitation woul[d] be tolled if the injured party suffered from a disability prescribed i[n] OCGA Title 9, Chapter 3, Article 5. One of the Code sections in Arti[cle]

---

[1] Section 9-3-71 was amended in 1985, in part, to provide that "[e]xcept as otherwis[e] provided in this article, an action for medical malpractice shall be brought within two year[s] after the date on which *an injury or death arising from* a negligent act or omission occurred[,]" (emphasis supplied), but this change did not affect Carl Hall, as the alleged malpractice o[f] which he complains and the alleged injuries arising appear to have occurred during the sam[e] period, March-April 1986.

[2] Section 9-3-73 then stated that "[t]he disabilities and exceptions prescribed in Articl[e] 5 of this chapter in limiting actions on contracts shall be allowed and held applicable t[o] actions, whether in tort or contract, for medical malpractice."

cle 5, OCGA § 9-3-90, (as amended in 1984 respecting "persons imprisoned," Ga. L. 1984, p. 581), provides that

> [m]inors and *persons who are legally incompetent because of mental retardation or mental illness*,[3] who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons. [Emphasis supplied.]

On July 1, 1987, an amendment to § 9-3-73 became effective which significantly restricted the period of disability that would toll the operation of § 9-3-71. Pursuant to that amendment, § 9-3-73 now provides that:

> (a) Except as provided in this Code section, the disabilities and exceptions prescribed in Article 5 of this chapter in limiting actions on contracts shall be allowed and held applicable to actions, whether in tort or contract, for medical malpractice.

> (b) Notwithstanding Article 5 of this chapter, *all persons who are legally incompetent because of mental retardation or mental illness* . . . shall be subject to the periods of limitation for actions for medical malpractice provided in this article. . . .

> (c) Notwithstanding subsections (a) and (b) of this Code section, in no event may an action for medical malpractice be brought by or on behalf of:

> (1) A person who is legally incompetent because of mental retardation or mental illness more than five years after the date on which the negligent or wrongful act or omission occurred; . . .

> (d) Subsection (b) of this Code section is intended to create a statute of limitations. . . .

> . . .

> (g) . . . No action which would be barred before July 1,

---

[3] Before the enactment of the Official Code of Georgia, the predecessor statute of § 9-3-90 (a), Ga. Code Ann. § 3-801, provided that "[i]nfants, idiots, or insane persons" were entitled to have statutes of limitation tolled. The Official Code of Georgia changed that term to the current "[m]inors and persons who are legally incompetent because of mental retardation or mental illness."

1987, by the provisions of this article, as amended, but which would not be so barred by the provisions of this article and Article 5 of this chapter in force immediately prior to July 1, 1987, shall be barred until July 1, 1989. [Emphasis supplied.]

Subsequently, in *Mansfield v. Pannell*, 261 Ga. 243, 245 (404 SE2d 104) (1991), this Court construed subsections (b) and (g) as meaning that "no action will be barred before July 1, 1989."

Accordingly, if it is assumed that Carl Hall suffered from a legal disability by virtue of being "legally incompetent because of mental retardation or mental illness," then before the enactment of the amendment to § 9-3-73 he would have enjoyed (pursuant to §§ 9-3-71, then 9-3-73, and 9-3-90) the benefit of having the statute of limitation, § 9-3-71, tolled until such time as he became competent. However, after the effective date of the amendment to § 9-3-73, that statute, as judicially construed in *Mansfield*, supra, 261 Ga., would have required suit to be filed on his behalf by July 1, 1989. As we have already described, appellee did not file suit until March 22, 1991.

(b) Appellee asserts that §§ 9-3-73 (b) and 9-3-90 are not applicable to her action because Carl Hall is not legally incompetent as a result of either mental retardation or mental illness. He is, she asserts, nevertheless excluded from the operation of the medical malpractice statute of limitation, because he is most certainly legally incompetent due to traumatic brain injury and consequently falls within a category appropriately described as "mentally incompetent." In fact, she contends, her suit is entitled to the tolling of the statute of limitation under the more expansive common law of Georgia because, as noted, Carl Hall is neither mentally retarded nor mentally ill.

While we appreciate the distinction urged on this Court by the appellee, we cannot agree that it supports the trial court's ruling. The general rule concerning the effect of changes in the language of preexisting statutes that were affected by the enactment of the Official Code of Georgia is stated in OCGA § 1-1-2, which provides that

[t]he enactment of this Code is intended as a recodification, revision, modernization, and reenactment of the general laws of the State of Georgia which are currently of force and is intended, where possible, to resolve conflicts which exist in the law and to repeal those laws which are obsolete as a result of the passage of time or other causes, which have been declared unconstitutional or invalid, or which have been superseded by the enactment of later laws. *Except as otherwise specifically provided by particular provisions of this Code, the enactment of this Code by the General Assembly is not*

*intended to alter the substantive law in existence on the effective date of this Code.* [Emphasis supplied.]

This Code section has been interpreted as stating that "the adoption of the new Michie Code was intended only as a recodification and modernization of the old Code, and its enactment was not intended to alter the substantive law then in existence." *Newsome v. Dept. of Human Resources,* 199 Ga. App. 419, 420 (1) (405 SE2d 61) (1991). In applying § 1-1-2 to the present case, we must determine what was the preexisting law concerning the tolling of statutes of limitation for persons with mental disabilities, and whether the Legislature intended to effect a change in that substantive law when it enacted the Official Code of Georgia. *Tuten v. City of Brunswick,* 262 Ga. 399 (418 SE2d 367) (1992); *Whaley v. State,* 260 Ga. 384 (393 SE2d 681) (1990). See also *Danuel v. State,* 262 Ga. 349, 351-352 (2, 3) (418 SE2d 45) (1992).

We first address what was the preexisting law in this area. In *Lowe v. Pue,* 150 Ga. App. 234 (257 SE2d 209) (1979), the Court of Appeals construed the term "insane persons" as used in Ga. Code Ann. § 3-801 (the statutory predecessor of OCGA § 9-3-90, see fn. 3, supra) to include the "substantially similar," *Lowe* at 235, term "mentally incompetent" persons, as there exists " 'no distinction between one mentally incompetent and one who is insane' . . . [cit.]," *Lowe* at 236. Subsequently, the Court of Appeals construed its holding in *Lowe* by stating in *Tri-Cities Hosp. Auth. v. Sheats,* 156 Ga. App. 28, 30 (273 SE2d 903) (1980), that *Lowe* "stands for the proposition that . . . 'mental incapacity' is included within 'insanity' as used in Code Ann. § 3-801." Thus, we find that under preexisting law Carl Hall would have been intended to enjoy the status of legal disability.

There is no specific indication in § 9-3-90 that the legislature intended to change the preexisting law when it reenacted the Official Code of Georgia. The Court of Appeals is in agreement with us on this point. In *Chapman v. Burks,* 183 Ga. App. 103, 104 (1) (357 SE2d 832) (1987), that Court construed the language of OCGA § 9-3-90 that referred to "persons who are legally incompetent because of mental retardation or mental illness," and stated that the Court did "not perceive that the legal concept has changed despite the modernizing of the statutory language." We find that the enactment of the Official Code of Georgia did not change the preexisting meaning of the predecessor of § 9-3-90. *Tuten,* supra, 262 Ga.; *Whaley,* supra, 260 Ga.

For these reasons, we hold that it was the legislative intent for Carl Hall to enjoy the benefit of § 9-3-90 before the enactment of § 9-3-73 (b). Moreover, we hold that, in light of apparent legislative intent to closely link §§ 9-3-90 and 9-3-73 (b), the most harmonious interpretation of § 9-3-73 (b) is that the term "legally incompetent

because of mental retardation or mental illness" has the same meaning as that identical term in § 9-3-90. Accordingly, we hold that § 9-3-73 (b) was intended to apply to Carl Hall, and to require suit to be filed on his behalf by July 1, 1989.

2. Appellee contends that § 9-3-73 (b) is unconstitutional because it violates equal protection and due process guarantees under the 1983 Georgia Constitution and the United States Constitution.

(a) Much of appellee's argument is directed to hypothetical situations in which an incompetent person might fail to meet the deadline of the statute of limitation because no person took an interest in his case, or because the person or persons who did act on his behalf lacked the ability to bring suit before the deadline. However, we decline to address these hypothetical situations, since, as is argued by appellants, none of those situations pertains to Carl Hall, and appellee thus lacks standing to base her constitutional arguments on them. See *Tempo Management v. DeKalb County*, 258 Ga. 713 (1) (373 SE2d 622) (1988); *Lambeth v. State*, 257 Ga. 15, 16 (354 SE2d 144) (1987).

(b) We find no merit in appellee's argument insofar as she asserts that the statute denies equal protection and due process as applied to Carl Hall.[4] She complains that the person, if any, acting on behalf of the incompetent person may not have "the inclination and the ability to cause a medical malpractice action to be filed for the mentally incompetent person." However, the stipulated facts of this case show that Carl Hall had a legal guardian to act on his behalf, and that his guardian retained counsel specifically to investigate the possibility of bringing a malpractice suit. Moreover, there is no suggestion by appellee that she and her counsel were in any respect unable to properly evaluate Carl Hall's malpractice claim and file it before the period of limitations ran.[5] Under these circumstances, we hold that Carl Hall has suffered no deprivation of equal protection or due process.

3. Appellee complains that § 9-3-73 (b) violates the Americans With Disabilities Act (hereinafter "the ADA"), 42 USC § 12131 et seq. However, appellee's argument would only be relevant to this appeal if she had raised it in the context of a claim in the trial court, that is, if she had sought relief from the trial court based on the alleged violation of the ADA. As she raises the ADA question for the first time on appeal, she presents nothing for us to consider.

---

[4] We have noted appellants' contentions that this issue is controlled by *Mansfield v. Pannell*, supra, 261 Ga. However, in *Smith v. Cobb County-Kennestone Hosp. Auth.*, 262 Ga. 566, 569 (1a) (423 SE2d 235) (1992) we have held that *Mansfield*'s holding was limited to the equal protection issue that we had under consideration in that case.

[5] No explanation has been offered for appellee's failure to file suit before the period of limitations ran.

4. For the foregoing reasons, we hold that appellee's suit was barred by the statute of limitation, and that the trial court erred by denying summary judgment to appellants.

The remaining enumerations by appellants are therefore mooted.

*Judgment reversed. All the Justices concur, except Benham, Sears-Collins and Hunstein, JJ., who dissent.*

SEARS-COLLINS, Justice, dissenting.

I agree with the majority that under the law in this area prior to the adoption of the Official Code of Georgia Annotated (the Code), the statute of limitation would have been tolled for a person suffering from a traumatic brain injury, such as the appellee in this case, just as it would have been for any legally incompetent person. (Majority, p. 643). The majority relies on § 1-1-2 to hold that the language used in the present version of §§ 9-3-90 and 9-3-73 (b) is just as inclusive. (Majority, p. 643). That is where I disagree.

It is the job of the legislature to enact statutes. In fact many of the battles fought in the legislature concern what the words of a statute will be. Consequently, when certain words are chosen to convey legislative intent, those words are sanctified with the policy-making authority of the legislature, and their plain meaning cannot be ignored unless its application would lead to an absurd or impossible result. Moreover, it is also for the legislature to amend a statute if the language used does not convey the intended meaning.

In § 9-3-90, the legislature specifically adopted three distinct categories of persons for whom tolling provisions will apply: minors, those persons legally incompetent due to mental retardation, and those persons legally incompetent due to mental illness. Likewise, the exception to the tolling provision found in § 9-3-73 (b) refers specifically to only those same distinct categories of individuals. There is nothing unclear about the language used in either statute. Rather, the plain language in each statute *excludes* those persons who are legally incompetent due to reasons other than mental retardation or mental illness.

Such persons are not without the benefit of tolling, however. Under the common law, a statute of limitation was tolled for any legally incompetent person until the incompetency was removed. See R. Pound, *The History of the Common Law* 444 (1913); *Dicken v. Johnson*, 7 Ga. 484, 492 (1849). The common law is still in force in Georgia, except where it has been "changed by express statutory enactment or by necessary implication." *Robeson v. Intl. Indem. Co.*, 248 Ga. 306, 307 (282 SE2d 896) (1981); OCGA § 1-1-10.[6] The legislature

---

[6] OCGA § 1-1-10 (b) states as follows:
The following laws and parts of laws are not repealed by the adoption of this

has not changed the common law regarding tolling by including only the mentally ill and mentally retarded in § 9-3-90, it has merely codified *in part* that fundamental rule. Those persons who are legally incompetent for reasons other than mental illness or mental retardation still retain the common law tolling benefit. However, there was no common-law *exception* to tolling for malpractice actions. Therefore, the exception in § 9-3-73 (b) should be imposed pursuant to its plain meaning: only upon the mentally retarded and mentally ill. Had the legislature intended to encompass within the exception contained in § 9-3-73 (b) persons who are incompetent for reasons other than mental retardation or mental illness, it would have done so specifically, as it has in other areas.[7]

In this case, the appellee had no brain injury when he entered into the appellants' care. The appellee's brain injury was sustained only after his brain was deprived of oxygen due to a malfunctioning chest tube, allegedly due to the appellants' malpractice. Far from being absurd or impossible, the result of the application of the plain language of the exception in § 9-3-73 (b) in this case is to prohibit a defendant who may have precipitated a plaintiff's incapacity from benefiting from a tolling exception purportedly created by that incapacity.

For the above reasons, I would hold that the appellee, who is neither mentally retarded nor mentally ill, but is legally incompetent due to a traumatic brain injury, should receive the benefit of preexisting common law tolling provisions, and that the trial court properly declined to grant summary judgment.

I am authorized to state that Justice Benham and Justice Hunstein join in this dissent.

DECIDED DECEMBER 3, 1992 —<br>RECONSIDERATION DENIED DECEMBER 18, 1992.

*Love & Willingham, Daryll Love, Allen Willingham,* for appellants (case no. S92A1007).
*Sullivan, Hall, Booth & Smith, Henry D. Green, Jr.,* for appel-

---

Code and shall remain of full force and effect until otherwise repealed, amended, superseded, or declared invalid or unconstitutional:

An Act for reviving and enforcing certain laws therein mentioned and adopting the common laws of England as they existed on May 14, 1776. . . . [Id. (c) (1).]

[7] See, for example, OCGA § 29-5-1, which allows a probate court to appoint a guardian for persons who are incapacitated due to "mental illness, mental retardation, *mental disability, advanced age, physical illness or disability, chronic use of drugs or alcohol, detention by a foreign power, disappearance, or other cause. . . .*" (Emphasis supplied.) See also OCGA § 37-3-1 (16.1), which provides that "traumatic brain injury" shall not be considered "mental illness" for purposes of treatment.

lants (case no. S92A1008).

*Davis, Gregory & Christy, Hardy Gregory, Jr., Dehler & Griffin, Mark F. Dehler, James L. Bentley III,* for appellees.