S96A0323. CHARTER MEDICAL INFORMATION SERVICES, INC. v. COLLINS.

(470 SE2d 655)

THOMPSON, Justice.

State Revenue Commissioner Marcus E. Collins, Sr. served Charter Medical Information Services, Inc. ("Charter") with a notice of assessment and demand for payment of $197,565.41 in sales and/or use taxes, penalties, and interest, for the period from July 1, 1987 through July 31, 1991.[1] The assessment is based upon the transfer of

---

[9] *Carter,* 246 Ga. at 356 (quoting *McIntyre,* 120 Ga. at 71).
[10] *McIntyre,* 120 Ga. at 69-70 and 72-73.
[1] The demand was made pursuant to OCGA § 48-8-30 (a) of the Georgia Retailers' and Consumers' Sales and Use Tax Act, as amended, OCGA § 48-8-1 et seq.

certain computer equipment from Charter to other corporations which, like Charter, are wholly-owned subsidiaries of Charter Medical Corporation. Charter purchased the equipment and paid Georgia sales tax to its vendors at the time of its initial purchase. Charter later leased the equipment to sister corporations, each of which was 100 percent owned by Charter Medical Corporation. The Commissioner claimed that Charter was required to collect a second sales tax from the related corporations upon each transfer.[2] After the Commissioner denied Charter's protest letter, it filed an appeal to the Superior Court of Bibb County, asserting that the distribution of equipment to its sister corporations and the subsequent use of that equipment are exempt from Georgia sales and use tax under OCGA § 48-8-3 (42).[3] Cross-motions for summary judgment were filed. The trial court denied relief to Charter, and granted summary judgment to the Commissioner. Charter filed an application for discretionary review of that order in the Court of Appeals, which was denied. We granted a petition for writ of certiorari, and posed the following question:

> Whether the literal language employed in OCGA § 48-8-3 (42) is to be given effect or whether OCGA § 1-1-2 compels that the language of that statute be construed as a scrivener's error to be given the same substantive effect as that employed in former Ga. Code Ann. § 91A-4503 (pp).

Prior to the enactment of the Official Code of Georgia, an exemption to the sales and use tax was codified in former Ga. Code Ann. § 91A-4503 (pp) (Ga. L. 1978, p. 1634). It applied where:

> The use by, or lease or rental of tangible property to, a person who acquires the property from another person where both persons *are under 100% common ownership* and where the person who furnishes or leases or rents the property has: (1) Previously paid sales or use tax on the property; . . .

(Emphasis supplied.)

With the adoption of the Official Code of Georgia in 1982, Ga. Code Ann. § 91A-4503 (pp) was replaced by OCGA § 48-8-3 (42). The present provision, unaltered by legislative amendment, exempts:

> The use by, or lease or rental of tangible personal property

---

[2] By stipulation of the parties, that assessed amount was set off by a credit of $18,435.83.

[3] The appeal was brought under OCGA § 48-2-59.

to, a person who acquires the property from another person where both persons have *100 percent common ownership of the property* and where the person who furnishes, leases, or rents the property has: (A) Previously paid sales or use tax on the property; . . .

(Emphasis supplied.)

OCGA § 48-8-3 (42), and its predecessor contain identical language, except that the present statute seems to require that the tax-exempted property must be owned by both the transferor and the transferee, while under the former statute, the exemption applied if the transferor and transferee are under common ownership. It is acknowledged that application of the former statute would demand dismissal of the assessment because all corporate subsidiaries involved in the transfer of the computer equipment are wholly-owned by Charter Medical Corporation, i.e., "are under 100% common ownership." The question is whether OCGA § 48-8-3 (42), which applies only to transfers between common owners of the leased property, should operate to tax the Charter leases.

The Commissioner asserts, and the trial court agreed, that in enacting the Official Code, the legislature repealed the former exemption in its entirety and imposed another exemption as to an entirely new class of transactions. That is, that the legislature intended a substantive change in the exemption provision. This Court has explained that in enacting the Official Code, it was the intent of the legislature to recodify, revise and modernize the general laws of Georgia. *Whaley v. State*, 260 Ga. 384 (393 SE2d 681) (1990). See also *Kumar v. Hall*, 262 Ga. 639, 643 (423 SE2d 653) (1992) (Michie Code only intended as a recodification and modernization of the old Code). Accord *Worley v. State*, 265 Ga. 251, 253 (454 SE2d 461) (1995); *Newsome v. Dept. of Human Resources*, 199 Ga. App. 419 (1) (405 SE2d 61) (1991). Indeed, OCGA § 1-1-2 provides: "Except as otherwise specifically provided by particular provisions of this Code, the enactment of this Code by the General Assembly is not intended to alter the substantive law in existence on the effective date of this Code."

We recently addressed a similar issue in *Brophy v. McCranie*, 264 Ga. 187 (442 SE2d 230) (1994). With the enactment of the Official Code, two paragraphs contained in the former Code were consolidated into one and certain clarifying language was omitted. If given effect, the new provision would result in a change in substantive law. We applied OCGA § 1-1-2, and held that in the absence of legislative amendment, the former provision controlled. Here, as in *Brophy*, blanket enactment of the revised Code alone is insufficient to show a legislative intent to effect a substantive change from previous law.

Looking to the language of the General Assembly in the preamble

to the original enactment, its intended effect was "to exempt from the [sales and use] tax certain transactions between persons with common ownership." Ga. L. 1978, p. 1634. It is apparent without dispute that the General Assembly has taken no specific action to change the exemption since its enactment in 1978. See generally *Brophy*, supra. The Commissioner argues that such legislative silence evidences an intent to change the former law by acquiescence. But silence alone does not compel the conclusion that the legislature intended OCGA § 48-8-3 (42) to alter the substantive law in effect at the time of the Code revision. See generally *Dept. of Corrections v. Hicks*, 209 Ga. App. 154 (433 SE2d 64) (1993).

It is our function to construe the law to implement the legislative intent. *Mullins v. First Gen. Ins. Co.*, 253 Ga. 486 (322 SE2d 265) (1984). Since there is no specific indication that the legislature intended to change the preexisting law when it adopted the Official Code, we view alterations of the Code Revision Commission in redrafting the statute and in substituting the words "common ownership of the property" for "persons under 100% common ownership," as merely a scrivener's error, and we apply the substantive law in effect at the time of enactment of the 1982 Code. Accordingly, the assessment must be set aside and Charter is entitled to summary judgment.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 28, 1996.

*Sutherland, Asbill & Brennan, Richard G. Murphy, Jr., Russell S. Bonds,* for appellant.

*Michael J. Bowers, Attorney General, David A. Runnion, Senior Assistant Attorney General,* for appellee.